In the Matter of ST. JOE RESOURCES COMPANY, a Division of St. Joe Minerals Corporation, Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, November 25, 1987

---

**APPEARANCES OF COUNSEL**

*Sanders D. Heller* for petitioner.

*Robert Abrams, Attorney-General (John Q. Driscoll* of counsel), for respondent.

## OPINION OF THE COURT

HARVEY, J.

The facts are not in dispute. Petitioner is engaged in the business of mining zinc ore. It operates two mines and a mill in the community of Balmat and a third mine in the Town of Pierrepont, all in St. Lawrence County. The Pierrepont mine is located 28 miles from the Balmat mill. The zinc ore is not saleable when it is brought to the surface. It requires milling in order to complete the mining process and produce a marketable product. Petitioner thus purchased trucks which are used to transport the ore mined in Pierrepont to the Balmat mill. It is these trucks, and the fuel used in them, which respondent determined were subject to taxation. Respondent assessed a tax of $37,491.23 plus interest for the period of December 1, 1979 through August 31, 1982. The assessment was sustained following a hearing and this proceeding ensued.

Petitioner contends that its trucks and the fuel they use are exempt from sales and use tax under Tax Law § 1115 (a) (12) and (c). Since it is conceded that the fuel is exempt if the trucks are exempt, we need only focus our analysis on petitioner's trucks. An exemption from taxation is provided for machinery or equipment used "directly and predominately in the production of tangible personal property * * * by * * * processing * * * mining or extracting" (Tax Law § 1115 [a] [12]). Determining whether petitioner's use of its trucks falls within this tax exemption requires determinations as to the nature of petitioner's mining process and the role of the trucks in that process.

Respondent asserts that petitioner's operation consists of two distinct and unrelated parts, extracting the ore and then milling it, and that petitioner's trucks are not directly involved in either of these. If we accepted respondent's premise, then petitioner's trucks clearly could not be considered as directly involved in either of the two separate processes. On the facts at hand, however, we do not believe that petitioner's operations are susceptible to the bifurcation urged by respondent.

Significant in this regard is the language of Tax Law § 1115 (a) (12). The statute refers to both the activities of "mining or extracting" as including potentially exempt uses. In constru-

ing this statute, meaning must be given to all of the language employed, and words should not be rejected as mere surplusage *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 231). The interpretation urged by respondent would be viable if the statute referred only to extracting. Indeed, given the deference often afforded to the interpretation of statutes which an agency administers *(see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459), if the statute here referred only to "mining" and the agency had construed this term in a narrow fashion we might be constrained to accept its interpretation. We cannot, however, consistent with accepted tenets of statutory interpretation, read "mining" and "extracting" as synonymous if a logical distinction does in fact exist.

The term "mining" is not defined in the Tax Law and thus we turn to other authority. For purposes of Federal taxation, mining is defined as: "not merely the extraction of the ores or minerals from the ground but also the treatment processes * * * and * * * the transportation of ores or minerals * * * from the point of extraction from the ground to the plants or mills in which such treatment processes are applied" (26 USC § 613 [c] [2]). The Environmental Conservation Law defines mining as: "the extraction or removal of minerals from the ground * * * including any activities or processes or parts thereof for extraction or removal of minerals from their original location and the preparation, washing, cleaning or other processing of minerals at the mine location so as to make them suitable for commercial, industrial or construction use" (ECL 23-2705 [8]). Both of these definitions are basically consistent with the definition of mining provided by the Society of Mining Engineers, which states that: "Mining may be defined * * * as the act, process or work of extracting minerals or coal from their natural environment and transporting them to the point of processing or use" (Cummins, SME Mining Engineer Handbook § 1.2, at 1-2 [1973]). It is evident from the above that mining should not be narrowly construed to include only the extracting of minerals. In the case at bar, it is uncontested that there was no market for the zinc ore as it existed when it was extracted from the ground. To make the product saleable, it was necessary to process it at the mill. We thus find that the extraction and milling of the zinc ore were all part of the mining process as that term is referred to in Tax Law § 1115 (a) (12).

The next issue is whether petitioner's trucks were used *directly* in production. Determining whether equipment used

to transport materials is used directly in production requires consideration of "the nexus extant between the end product and the machinery or equipment so as to ascertain if the bond or union between them is such that it can be said that the machinery or equipment is necessary and essential to production" *(Matter of Rochester Ind. Packer v Heckelman,* 83 Misc 2d 1064, 1065 [Mahoney, J.]). Thus, a forklift which transfers materials from one assembly line to another is exempt (20 NYCRR 528.13 [c] [2], example 8), and trucks used to transport water needed in drilling to the drilling site are likewise exempt *(see, Matter of Envirogas, Inc. v Chu,* 114 AD2d 38, *affd* 69 NY2d 632). However, equipment used to transport personnel serves an administrative function *(see, supra).* Further, trains used to transport raw material from a foreign market where they were purchased to a plant for processing are not directly involved in production since their function precedes commencement of the production process *(see, Matter of Rochester Ind. Packer v Heckelman, supra).* In order to determine whether petitioner's trucks are used directly in the production process, it is necessary to consider the nexus between the function served by the trucks and the end product of the mining process.

The Pierrepont mine is a decline mine and thus equipment which respondent refers to as "trucks" are used to bring the ore from underground to the surface.* Since the ore is not saleable when it comes out of the mine, it is loaded onto the trucks which are the subject of this proceeding. These trucks are then used to transport the ore 28 miles over public highways to the Balmat mill where processing is completed and a marketable product is produced. It is clear that petitioner's trucks are an essential element of the mining process and are directly involved in the production of the final product. Their function is solely to convey the product from one spot in the production process where it has virtually no marketable value to another where production continues and a saleable product emerges. The essence of the truck's function is not significantly different from that of a forklift which transfers materials from one assembly line to another.

Respondent, however, seeks to support its position that petitioner's trucks are not used directly in production by pointing out that petitioner's trucks are registered with the

---

* Interestingly, respondent has not argued that these "trucks" are subject to taxation.

Department of Motor Vehicles. Indeed, an example in respondent's regulations seems to attach some significance to whether or not a vehicle is registered with the Department of Motor Vehicles *(see,* 20 NYCRR 528.13 [c] [2], example 7). However, no rational explanation has been offered to support this example. The only apparent explanation offered for the example is that a vehicle registered with the Department of Motor Vehicles might be used for purposes other than production. However, the vehicle only needs to be used "predominantly" in production (Tax Law § 1115 [a] [12]), which has been interpreted to mean over 50% of its use (20 NYCRR 528.13 [c] [4]). Thus, the occasional use of the vehicle on the highway for a use not directly related to production does not nullify its exemption. We note that here there was no contention nor any proof that petitioner's trucks were used for any purpose other than conveying ore from the Pierrepont mine to the Balmat mill. The regulation which example 7 seeks to illustrate specifically provides that equipment is *directly* involved in production when it is used in the "conveyance of materials" (20 NYCRR 528.13 [c] [1] [iii]). On the facts at hand, petitioner's use of its trucks falls into this definition. Since an example merely serves as a speculative and hypothetical illustration of a regulation, it is not entitled to the same degree of judicial deference as a regulation. This is particularly true where, as here, petitioner's activity is in compliance with the underlying statute and the language of the regulation, but appears to conflict only with an example in the regulation.

YESAWICH, JR., J. (dissenting). The settled law appears to me to be such that dismissal of the petition is inevitable. Petitioner seeks the benefit of an exemption from sales and use tax; hence, it carries the burden of proving that it comes within the language of the exemption *(Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 195). Since statutes creating exemptions are to be strictly and narrowly interpreted, to prevail petitioner must establish that "its interpretation is the *only* reasonable construction" *(Dental Socy. v New York State Tax Commn.,* 110 AD2d 988, 989, *affd on opn below* 66 NY2d 939 [emphasis supplied]). If respondent's version is not irrational or unreasonable, it must be upheld *(Matter of Howard v Wyman,* 28 NY2d 434, 438).

In my view, respondent's determination here is both rational and in keeping with the objective of Tax Law § 1115 (a)

(12) and (c). The Internal Revenue Code and Environmental Conservation Law definitions of mining relied upon by the majority were conceived with vastly different goals in mind than that of a sales and use tax assessment. And the expansive opinion issued by the Society of Mining Engineers as to what it believes constitutes mining has no binding effect upon respondent in its application of the Tax Law. Respondent was at liberty to reject that opinion and to adopt any other rational definition of mining such as one that excludes the transporting of raw materials on public roads in tractor trailer trucks required to be registered with the Department of Motor Vehicles.

Moreover, with limited exceptions not relevant here, Tax Law § 1115 (a) (12) focuses on machinery and equipment used directly or predominantly in "production". Quite reasonably, respondent excluded trucking from the reach of the exemption. And I read *Matter of Rochester Ind. Packer v Heckelman* (83 Misc 2d 1064) as being consistent with respondent's position. In that case, despite the fact that they played an integral role in processing the livestock into saleable meat products, railway cars purchased to transport the cattle to a slaughterhouse were denied a sales and use tax exemption because the cars simply provided "a means of transporting raw materials" *(supra,* at 1066). To this end, in conformity with the Legislature's expressed intention to bestow an exemption on production equipment and machinery, respondent's regulations distinguish between transportation, deemed to be an administrative activity, and production, subjecting the former to sales and use tax *(see,* 20 NYCRR 528.13 [b] [i], [ii]). The majority has effectively enlarged the exemption conferred by Tax Law § 1115 (a) (12) and (c) so as to eliminate this distinction, to the point, I believe, that respondent may no longer weigh the taxpayer's need to travel on public roadways or to register its vehicles for use thereon, or to even take into account the distance to be traveled, as factors bearing upon whether the taxpayer qualifies for the exemption.

The emphasis on the unsaleable character of the ore at the minehead strikes me as a dubious distinction. Nothing in the statute suggests that saleability is a basis for the exemption. Furthermore, were someone to build a second mill near petitioner's mine, the ore would surely be saleable. And affording an exemption on the ground that the ore processing mill here is a monopsony is neither justifiable nor salutary.

As for *Matter of Envirogas, Inc. v Chu* (114 AD2d 38, *affd on*

*opn below* 69 NY2d 632), there the trucks that hauled water to the wellhead, to be used in the removal of natural gas, were ruled exempt, while trucks used to transport personnel and equipment to the production site were not. Clearly, petitioner's trucks used inside the mines are more akin to the former, given their intimate and direct connection with the production process, while those of petitioner's trucks engaged in hauling ore down the road are closer to the latter, involved in what is more commonly regarded as transportation *(compare,* 20 NYCRR 528.13 [c] [2], example 8 [the forklift], *with* 20 NYCRR 528.13 [c] [2], example 7 [trucks on a public road]).

Accordingly, I would confirm respondent's determination and dismiss the petition.

MAHONEY, P. J., MAIN and LEVINE, JJ., concur with HARVEY, J.; YESAWICH, JR., J., dissents and votes to confirm in an opinion.

Determination annulled, and petition granted, with costs.