254 N.J. Super. 653 (1992)
604 A.2d 189
GE SOLID STATE, INC., A DELAWARE CORPORATION (FORMERLY THE SOLID STATE DIVISION OF RCA CORPORATION), PLAINTIFF-APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1992.
Decided March 17, 1992.
*654 Before Judges J.H. COLEMAN, STERN and KEEFE.
Charles M. Costenbader argued the cause for appellant (Stryker, Tams & Dill, attorneys; Charles M. Costenbader of counsel; Ellen S. Delo on the brief).
Mary R. Hamill, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Mary R. Hamill on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
Plaintiff, GE Solid State, Inc. (GE), appeals from a decision of the Tax Court which affirmed that portion of a determination of the Director of the Division of Taxation assessing a use tax deficiency of $61,599 for the taxation audit period of July 1, 1981 through June 30, 1984. GE paid the use tax assessment under protest, $40,026 of the sum paid is attributable to a use tax imposed on GE's predecessor, the Solid State Division of RCA, purchase of machinery and equipment used to make photomasks. The remaining $21,573 is attributable to a use tax imposed on plaintiff's predecessor's purchase of photoplates used by plaintiff as reticles and printmasters in its photomask operation to make other photomasks. This machinery and equipment were used by plaintiff's predecessor in its high technology manufacturing of integrated circuits or "chips." The process is as complicated as it sounds and it has been *655 thoroughly outlined below. GE Solid State v. Director, Div. of Tax., 11 N.J. Tax 320, 323-329 (1990).
This appeal involves an interpretation of certain provisions of the Sales and Use Tax Act (Act), N.J.S.A. 54:32B-1 et seq. Under the Act, a sales tax is imposed on receipts from the sale of tangible personal property, except as provided otherwise under the Act. N.J.S.A. 54:32B-3(a). No sales tax issue is involved in this appeal. The Act also imposes a use tax on the use of any tangible personal property purchased at retail unless an exemption applies. N.J.S.A. 54:32B-6.
GE contended below and again on this appeal that the machinery and equipment in question are exempt from a use tax pursuant to N.J.S.A. 54:32B-8.13a, the so called manufacturing exemption. GE argues that when the Solid State Division of RCA purchased the photomask machinery and accessories, those purchases did not constitute taxable events because they represented "[s]ales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing...." N.J.S.A. 54:32B-8.13a. GE further contends that subsection 8.13a similarly exempts the reticles and printmaster "because they are used either directly in the production of integrated circuits by manufacturing or directly in the production of photomasks by manufacturing."
The Tax Court rejected GE's arguments and concluded that in light of the legislative history of the manufacturing exemption and the long standing administrative regulations, the Director's interpretation of the exemption was correct. Both the Director and the Tax Court concluded that subsection 8.13a exemption applies only to machinery used directly in the production or manufacturing of personal property that was for sale to an ultimate consumer, at which point a sales tax would be collected.
They relied in part upon N.J.A.C. 18:24-4.2 which defined "machinery, apparatus or equipment" and "manufacturing or processing" as follows:

*656 `Machinery, apparatus or equipment' means any complex, mechanical, electrical or electronic device, mechanism or instrument which is adapted to the accomplishment of a production process, and which is designed to be used, and is used, in manufacturing, converting, processing, fabricating, assembling, or refining tangible personal property for sale.

`Manufacturing or processing' means the performance of an operation or series of operations, the object of which is to place items of tangible personal property in a form, composition, or character different from that in which they were acquired. The change in form, composition, or character must be a substantial change, and it must result in a transformation of property into a different or substantially more usable product. [Ibid. emphasis added].
They also relied upon
N.J.A.C. 18:24-4.4(b), which provides that,
Production is limited to those operations commencing with the introduction of raw materials into a systematic series of manufacturing, processing, assembling, or refining operations, and ceases when the product is in the form in which it will be sold to the ultimate consumer. ... [Ibid. emphasis added],
and N.J.A.C. 18:24-4.4(c), which provides that,
Machinery, apparatus, or equipment is considered to be directly used in production only when it is used to initiate, sustain or terminate the transformation of raw materials into finished products.... [Ibid.]
The foregoing regulations were adopted by the Division of Taxation in 1969 construing the manufacturing exemption as it existed after the exemption was first enacted in 1966. These regulations were readopted in 1977 with virtually no change following the Legislature's reenactment of the exemption by L. 1977, c. 18.
Based on the application of these regulations, neither the photomasks nor the photoplates used to make reticles and printmasters to make photomasks were used directly in manufacturing because they were not sold directly to consumers. Rather, they were used to manufacture the integrated circuits which were sold to consumers on which sales taxes were collected. The judge concluded that the subsection 8.13a. exemption requires that the machinery be used "directly" and "primarily" in the production process and since it was not used "directly," he need not decide whether it was used "primarily."
We now affirm the judgment of the Tax Court substantially for the reasons stated by Judge Andrew in his *657 reported decision. An agency's interpretation of a statute it is entrusted with enforcing should prevail unless plainly unreasonable, Metromedia, Inc. v. Director, Div. of Tax, 97 N.J. 313, 327, 478 A.2d 742 (1984), or unless that construction is "just plain wrong." International Flavors and Fragrance, Inc. v. Director, Div. of Tax., 102 N.J. 210, 221, 507 A.2d 700 (1986) (Clifford, J., concurring). Agency regulations are presumptively valid, Medical Society of New Jersey v. Dept. of Law & Public Safety, 120 N.J. 18, 25, 575 A.2d 1348 (1990), and should not be invalidated unless they violate the enabling Act or its express or implied legislative policies. Public Service Electric & Gas Co. v. Dept. of Envtl. Protection, 101 N.J. 95, 103, 501 A.2d 125 (1985). Since the Legislature took no action to overturn the agency's regulations that have existed since 1969, the presumption of validity is enhanced. Beyond that, tax exemptions are to be strictly construed. Metpath, Inc. v. Director, Div. of Tax, 96 N.J. 147, 152, 474 A.2d 1065 (1984). See also Service Armament Co. v. Hyland, 70 N.J. 550, 558-559, 362 A.2d 13 (1976). Even though GE's arguments are impressive, we find no basis for interfering with the longstanding interpretation of the claimed exemption. To hold otherwise, would cause a substantial interruption of existing State tax policies. Such an interruption should come only from the Legislature.
Affirmed.
STERN, J.A.D. (concurring).
N.J.S.A. 54:32B-8.13a provides an exemption from taxation pursuant to the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., with respect to
[s]ales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining.
On its face, this statute provides an exemption from taxation of sales (and purchases) of items "directly and primarily" used in the production of "tangible personal property." It does not include a requirement that the "tangible personal property" be manufactured or produced "for sale."
*658 When the statute was enacted in 1977, the Legislature utilized the precise language of the prior statute which had been repealed in 1970. Regulations had been promulgated by the Director under the prior statute, and regulations are generally entitled to deference in interpreting a statute administered by the agency which promulgates the regulations. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). Hence, my colleagues, in agreement with the Tax Court, conclude that
[w]hen the Legislature, in fact, reenacted the exemption provision it employed the identical language of the former exemption provision. Thus, it must be presumed that it agreed with, and adopted, the interpretation of that language by the very agency charged with its administration. [GE Solid State v. Dir., Div. of Tax., 11 N.J. Tax 320, 333 (Tax Ct. 1990)].
The Tax Court determined that
[i]n light of the legislative history of the manufacturing exemption, the Director's interpretive regulations, i.e. those that predated the reenacted exemption and those that followed, the Director's long standing practice with which the Legislature has not interfered and the common understanding of the exemption provision, I find the Director's construction manifestly reasonable, and accordingly, must prevail. Id. at 335-36.
Accordingly, the Tax Court and my colleagues conclude that "[i]n order for the manufacturing exemption to apply, the tangible personal property being produced must be `for sale.'" Id. at 336.
As developed in the Tax Court opinion, id. at 331-333, N.J.S.A. 54:32B-8.13a was originally adopted as N.J.S.A. 54:32B-8(m)(1), effective April 29, 1966, see L. 1966, c. 30, § 8(m)(1), as amended by L. 1966, c. 53. The amended provision is identical to the current language of N.J.S.A. 54:32B-8.13a. In 1970, the provision was repealed, see L. 1970, c. 7, but it was reenacted by L. 1977, c. 18, and codified by L. 1980, c. 105, § 25. The sponsor's statement to the 1977 legislation noted that the bill exempted from the Sales and Use Tax "the purchase of business machinery and equipment" stating that "[t]his is in keeping with the practice of neighboring states. It will help to make New Jersey manufacturers more competitive with manufacturers in surrounding states." Moreover, the Tax Policy *659 Commission which recommended the restoration of the manufacturing exemption in its 1972 report quoted the following testimony taken at public hearings:
To survive, industrial plants located in New Jersey must compete with American industries located in many states which exempt or provide preferential treatment for investment in production facilities....
New Jersey industry's investment in new machinery is not rewarded with a credit but penalized with a tax which, necessarily, increases the sales price of manufactured goods and decreases the ability of New Jersey's industries to compete successfully in the market place. No state wishing to encourage the growth of its industrial base and the expansion of job opportunities can afford such an obstacle to investment. [Report of the New Jersey Tax Policy Commission (1972) at 73].
Thus, there is support for the view that the Legislature may have endeavored to copy Pennsylvania's then existing manufacturing exemption which exempted the acquisition of tangible personal property "whether for sale or use by the manufacturer." See 72 Conn. Gen. Stat. § 3403-2(c) quoted and discussed in Commonwealth v. Olan Mills, Inc. of Ohio, 456 Pa. 78, 317 A.2d 592, 594-595 (1974). Compare St. Joe Resources Co. v. State Tax Com'n, 132 A.D.2d 98, 522 N.Y.S.2d 252, 255-256 (3 Dept. 1987) (Yesawich, J. dissenting), rev'd on dissent, 72 N.Y.2d 943, 533 N.Y.S.2d 51, 529 N.E.2d 419 (Ct.App. 1988). See also N.J. Bell Tel. v. Director, Div. of Taxation, 152 N.J. Super. 442, 450, 378 A.2d 38 (App.Div. 1977) (Horn, J.A.D. concurring); Hoffman-LaRoche v. Taxation, Div. Director, 5 N.J. Tax 154, 171 n. 8 (Tax Ct. 1983), rev'd o.g. 192 N.J. Super. 552, 471 A.2d 786 (App.Div. 1983) (our Sales and Use Tax Act modeled on New York law). And, note, Metpath, Inc. v. Taxation Div., Director, 96 N.J. 147, 151, 474 A.2d 1065 (1984).
However, even when our Legislature adopts the express language of a statute of another state, it does not necessarily adopt its interpretation, see State v. Ramseur, 106 N.J. 123, 203-204, 524 A.2d 188 (1987); compare Todd Shipyard Corp. v. Weehawken, 45 N.J. 336, 343, 212 A.2d 364 (1965), and the record here contains no direct proof that the Legislature was aware of, or actually intended to adopt, the regulations promulgated by the Director under the statute before its repeal. *660 Further, regulations must be declared invalid in the absence of consistency with legislative policy or authorization. See Metromedia, supra; see also Airwork Ser. Div., etc. v. Director, Div. of Taxation, 97 N.J. 290, 296, 478 A.2d 729 (1984). Thus, if time had permitted, a challenge to the regulations under the prior statute may have succeeded.[1] I therefore, respectfully, disassociate myself from so much of the holding of this court which adopts the Tax Court's opinion relative to legislative history incident to the 1977 enactment or reenactment as a basis for interpreting the present exemption.
But we examine the statutory meaning in 1992, and not 1977 or even 1982. And we do so after the adoption of administrative regulations in 1977, see N.J.A.C. 18:24-4.1 et seq., -4.2, -4.4(b), and the filing of the so-called 1988 "SLERP Report" (see GE Solid State v. Dir., Div. of Tax., supra, 11 N.J. Tax at 334-335) on which no action was taken by the Legislature. Further, and as significantly, we review this case almost fifteen fiscal years after the relevant regulations were adopted and during which the Legislature relied upon projections from Sales and Use Tax receipts and on Sales and Use Tax revenues, as reported by the Department of the Treasury, in considering and adopting State budgets. See N.J.S.A. 52:27B-20 et seq., -46. See also N.J.S.A. 52:18A-4, -6,  6.2, -32, -46. Those projections and receipts were premised on the regulations of the Director of the Division of Taxation in the Department of the Treasury. See N.J.S.A. 52:18A-3, -24, -25, -48.
As the Tax Court stated
[i]t is a well-settled principle that an administrative construction of a statute with which the Legislature has not interfered over an extended period of time is proof that the administrative interpretation conforms with legislative intent and thus, is accorded great weight. [11 N.J. Tax at 334].
In so stating, Judge Andrew cited our Supreme Court's opinion in Body-Rite Repair Co. v. Taxation Div. Director, 178 *661 N.J. Super. 263, 428 A.2d 940 (App.Div. 1981), rev'd 89 N.J. 540, 545-546, 446 A.2d 515 (1982), where a majority of the Court noted "[t]he long-standing practical administrative construction ... and legislative acquiescence in that construction argue persuasively for the Director's interpretation." Id. at 545, 446 A.2d 515. There the Court upheld the "uniform administrative interpretation since 1967" of an exemption under the same Act and reversed our holding granting the exemption. See Body-Rite Repair Co. v. Taxation Div. Director, supra, 178 N.J. Super. at 265, 428 A.2d 940.
Body-Rite dealt with interpretation of a statute based on general principles of statutory construction, legislative history and the impact of post-enactment regulations. In Body-Rite there were no prior regulations, statutory repealer or reenactment, and the longstanding post-enactment regulations, adopted approximately fifteen years before the Supreme Court opinion, was significant.
I find the post-enactment factors equally significant with respect to this case involving another exemption under the same Act. Particularly because of the impact of taxing measures and the Legislature's reliance upon the role and position of the Department of the Treasury as to projections and revenues, and the fiscal impact of a judicial decision affecting that policy, cf. Salorio v. Glaser, 93 N.J. 447, 461 A.2d 1100 (1983),[2] I concur in the court's interpretation of N.J.S.A. 54:32B-8.13a, but do so without reliance on the pre-enactment history.
The majority's position gains support from the pre-enactment history, and in the circumstances there appears no facial reason not to add that factor to support the holding. However, while it is not for the Judiciary to decide our tax policy or its wisdom, I believe that the pre-enactment legislative history between 1970 and 1977 can be read to endorse a policy, later reiterated *662 in the 1982 "SLERP" Report, that by not taxing the use of "hitech" equipment and machinery used in the manufacturing process, the Legislature would ultimately benefit the State, its economy and even its tax revenues, by promoting manufacture and sales here and by increasing job opportunities in the State. As judges we cannot construe the statute to that end in light of the Legislature's silence since 1977, but we can note the effect of the background history on the issues before us and suggest that the Legislature might want to reexamine this history and reconsider the appropriate tax policy in today's economic climate.
NOTES
[1] The regulations were in effect only between August 1969 and the effective date of the repeal of N.J.S.A. 54:32B-8(m)(1) on March 1, 1970. See 11 N.J. Tax at 331-332.
[2] Salorio held the Emergency Transportation Tax unconstitutional on June 8, 1983, but concluded "that relief against enforcing the ETT tax with respect to income earned on and after January 1, 1984" was appropriate because of the fiscal impact to the State and to afford "a reasonable period of time to devise alternative revenue raising methods...." Ibid. at 467-468, 461 A.2d 1100.