SMALL, J.T.C.
The defendant, Director, Division of Taxation (the “Director”), moves to dismiss the complaint of the plaintiff, Amplicon, Inc. (the “Taxpayer” or “Amplicon”), seeking a refund of taxes paid under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 through -27, on the grounds that the claim for refund was filed more than ninety days after the tax was assessed. N.J.S.A. 54:32B-19. See Vicoa, Inc. v. Director, Div. of Taxation, 166 N.J.Super. 496, 400 A.2d 105 (App.Div.1979). The Taxpayer resists the motion on three grounds: .
1. the applicable statute of limitations is four years from the date of the tax payment, not ninety days from the date on which it was assessed. N.J.S.A. 54:32B-20;
2. equitable principles enunciated in Toys "R" Us. Inc. v. Director, Div. of Taxation, 300 N.J.Super. 163, 692 A.2d 111 (App.Div.1997), require an examination Of the faets rather than mechanical application of the ninety-day statute of limitations;
3. the taxpayer’s time to make a claim for refund did not commence until it discovered that its vendors or customers paid taxes with respect to transactions on which the subject assessments against taxpayer were made.
After an audit under the New Jersey Sales and Use Tax and the New Jersey Corporation Business Tax (N.J.S.A. 54:10A-1 *131 through -40), the Director, by letter dated June 28,1995, assessed, and Amplicon, by check dated July 18, 1995, paid a deficiency in the amount of $445,679. By letter dated May 30, 1997, Amplicon filed a claim for refund with the Division of Taxation for a portion of the sales and use tax paid on July 18, 1995. By letter dated December 3, 1997, the claim for refund was denied as untimely filed pursuant to N.J.S.A. 54:32B-20(b). A timely appeal to this court followed.
Taxpayer, with principal offices in Santa Ana, California, is in the business of leasing tangible personal property. It has assets in every jurisdiction of the United States.
Review of the 1995 sales and use tax audit assessment papers supporting the June 28, 1995 assessment and the July 18, 1995 payment indicates that the assessment was based on lease transactions to New Jersey customers of Taxpayer for the period October 1989 through September 1993. A number of transactions were questioned, and either sales taxes or use taxes were assessed. Credits were given for various reasons, such as “ST-4” (exemption certificate), “UZ-6” (urban enterprise zone exemption), “Full Credit for Tax Paid on Vendor Invoice,” “Partial Credit for Tax Paid on Vendor Invoice.” Thus, it would appear that, after an initial audit, Taxpayer was given an opportunity to present proof that taxes were paid or were not due on the various transactions which formed the basis of the 1995 assessment. The June 28, 1995 letter, which was part of the assessment and schedule of liabilities sent to the Taxpayer, included the following language:
Please be advised that, based upon the documentation provided, the Sales Tax assessment has been reduced by the requested amount, $87,646.87 and the applicable interest removed.
However, since you failed to pay the uncontested portion of the liability pursuant to the Division’s acknowledgment letter of September 28, 1994, interest has continued to accrue on the balance due.
Kindly submit payment of the balance due as set forth on the attached schedule totaling $445,679.00.
In the event that yon are still in dispute with the auditor’s findings and still desire a conference, kindly contact me at the above address and number on or *132 before July 20, 1995. Otherwise, payment of the liability will be expected by that date.
[Emphasis supplied.]
A check payable to the State of New Jersey in the amount of $445,679 from Amplicon was dated July 18,1995.
As of July 18, 1995, therefore, the following had occurred: (1) Taxpayer had been audited and assessed for tax; (2) taxpayer had made submissions to the Division of Taxation sufficient to reduce its tax liability by over $87,000; (3) director had granted the full amount of a requested reduction in the amount of the assessment; (4) taxpayer had paid $445,679, the full amount of the remaining assessment and (5) taxpayer had not responded to the Division’s invitation for further discussions if there remained any additional disputed issues. There was an implicit agreement as to the amount of taxes owed; for a further conference. This amount was paid, and the audit was concluded.
Almost two years later, in May 1997, Taxpayer submitted claims for a partial refund of the tax paid in July 1995, in an amount in excess of $200,000. The basis for the refund claim was that Taxpayer’s customers or vendors had directly paid the taxes due or had paid the taxes to third parties, who had remitted the taxes to the Division of Taxation. The factual basis for these claims is similar to the factual basis for at least a portion of the $87,000 reduction in the initial assessment documented in the Division’s June 28, 1995 letter. Amplicon explains making these claims and submitting this information two years after its initial submission as follows:[1]
*133 Subsequent to the audit, the plaintiff hired, a new tax manager . This tax manager based upon the information he received from vendors, began reviewing the original audit papers.
The review indicated a faulty audit. The re-exammation and re-evaluation of the procedures used by the Division of Taxation’s auditor revealed numerous errors, all indicative of an improperly performed audit.
[Emphasis supplied.]
In one set of cases, Amplicon purchased equipment from Advanced Casino Systems, Inc. (“ACSI”), an Atlantic City vendor, and immediately leased that equipment to Trump’s Castle Associates (“Trump’s”), an Atlantic City lessee. The equipment was delivered directly to the lessee. The invoice to Amplicon had sales tax added to the purchase price. A handwritten notation on the invoice indicated that taxes would be paid directly by Trump’s to ACSI. The invoice was presented to the Division of Taxation in connection with the 1997 refund claim, but not in connection with the 1995 audit.[2]
*134 In another set of cases, Amplicon asserts that it sold some leases to CIT, a finance company, and that CIT collected tax from the lessees and remitted it to the Division of Taxation.
Taxpayer asserts that during the audit in 1994 and 1995, the Division of Taxation knew that it had collected these taxes from third parties, and at the same time was assessing them directly to Amplicon. Taxpayer characterizes this behavior as “double dipping.” Director asserts that he was not aware of having taxed any transaction twice, and that the audit papers suggest that, if such were the case >and were shown to the Director at the time of the 1995 audit, credit would have been given, as it was in those cases marked “Credit paid on vendor invoice” in the audit papers submitted to the court.
Based on the evidence before me, I conclude that: (a) information about taxation of transactions was available to Taxpayer through its clients and vendors; (b) Taxpayer obtained information from some clients and vendors and presented it to the Division of Taxation’s auditor, who used that information to reduce the assessment; (c) a newly hired tax manager obtained additional information which formed the basis of the 1997 refund claims (a new attempt to reduce the assessment beyond the $87,000 reduction obtained after the initial submission in 1995); (d) those claims were presented more than ninety days after the Division’s audit was concluded.
I.

The Taxation of Leases Under the New Jersey Sales and Use Tax

Essential to an understanding of the application of the statute of limitations, in this case, is an understanding of the way in which lease transactions in New Jersey are taxed and the way in which .various taxpayers report and pay taxes.
*135 Effective June 26, 1989, the way in which leases were taxed in New Jersey was fundamentally changed. Prior to that date, a leasing company which purchased equipment or other items for lease could provide its vendor with a tax exemption certificate (ST-3-Resale Certificate). Thereafter, a tax at the statutory rate was due with each lease payment from the lessee to the lessor for equipment which the lessor had previously purchased without the payment of tax. Thus, the total tax on a lease was equal to 6% of the total lease payments over the life of the lease, and was paid to the lessor, and remitted to the Division of Taxation, over the life of the lease with each lease payment.
The statute was amended, effective June 26, 1989, to provide that the tax previously payable over the life , of the lease would become due at the time the lease was executed, and the entire amount of the tax would be due from the lessor to the Division of Taxation at that time. L. 1989, c. 123. (The purpose of the amendment was to accelerate revenues to close a budget gap. See Introductory Statement to A. No. 4821, enacted as L. 1989, c. 123). The lessor was now required to provide his lessee with a Form ST-40 (Lease Certification), indicating that tax had been paid. The lessor was given the option of paying the tax on the sum of the lease payments over the life of the lease, or his total purchase price of the equipment purchased for lease. See geMerally CCH, New Jersey State Tax Reporter, ¶ 60 - 460. This fundamental change in the sales and use taxation of leases in New Jersey took place just before the transactions which are the subject of this appeal.
Under the new statutory structure applicable to the audit period in this case, Amplicon should have provided its vendors with ST-3 forms, effectively exempting the transactions from sales tax. Amplicon’s vendors should not have billed tax to Amplicon. On the lease of the equipment to its customers, Amplicon would have been obliged to pay tax to the State of New Jersey and provide its customers with ST-40 certificates. Taxpayer asserts that it is a major leasing company with assets in every jurisdiction in the United States. All taxpayers are charged with knowledge *136 of the law. Mayfair Holding Corp. v. North Bergen Tp., 4 N.J.Tax 38, 41 (Tax 1982), citing Gibraltar Factors Corp. v. Slapo, 41 N.J.Super. 381, 384, 125 A.2d 309 (App.Div.1956), aff’d 23 N.J. 459, 129 A.2d 567, appeal dismissed for lack of federal question, 355 U.S. 13, 78 S.Ct. 44, 2 L.Ed.2d 20 (1957). See also cases cited in Schirmer-National Co. v. Director, Div. of Taxation, 17 N.J.Tax 495, 504 (Tax 1998). A large, sophisticated taxpayer able to make payments of $445,000 within twenty days can hardly claim that it is not chargeable with knowledge of the law.
In fact, Taxpayer’s practices reveal that it did not properly deal with its New Jersey sales tax obligations on its purchase from ACSI and its lease to Trump’s. The purchase invoice reveals that the tax was billed to Taxpayer. Taxpayer should have simply submitted an ST-3, negating its obligation to ACSI. Instead, the invoice reveals that the sales tax was to be remitted to ACSI directly by Trump’s. Again, Trump’s had no obligation, under the sales tax law, to pay taxes, although perhaps under the lease contract with Taxpayer it assumed Taxpayer’s sales tax obligations. In short, under the new law, the State had to look only to Taxpayer for payment of tax on the lease to Trump’s. In fact, it appears that ACSI voluntarily collected a tax from Trump's, which was not due, and appropriately remitted it to the Division of Taxation.[3] It does not appear that ACSI was ever audited by the Division of Taxation.
There may have been some confusion, or lack of knowledge, with respect to the change in the way in which sales tax was imposed on leases after June 1989. Tax was assessed against Taxpayer. It appears that ACSI and Trump’s may have engaged in unnecessary collection and remittance of tax, and, accordingly, they would have been entitled to seek a refund of that payment within four years of its remittance to the Division of Taxation. Finally, it appears that, based on the 1995 audit, when the Taxpayer brought to the attention of the Division of Taxation *137 information of the nature it now presents, the assessment was reduced by over $87,000.
The issue before me is not whether the facts as now asserted by Taxpayer would result in a further reduction of the 1995 assessment if those facts had been presented at that time. The issue is whether the Taxpayer may seek a further reduction in assessed taxes more than ninety days after they were assessed and paid without protest.
11.

Appeal Periods Under the New Jersey Sales and Use Tax

Three provisions of the New Jersey Sales and Use Tax Act provide for the time within which a taxpayer may seek relief for an action by the Division of Taxation. N.J.S.A. 54:82B-19[4] provides that a taxpayer has ninety days from the date of an assessment to request a hearing with the Director of the Division of Taxation. N.J.S.A. 54:32B-21[5] provides that a taxpayer may, *138 within ninety days of any action of the Director, take an appeal to the Tax Court of New Jersey. N.J.S.A. 54:32B-20(a)[6] provides that a taxpayer may, within four years from the payment of a tax, seek a refund.
In a situation such as the one presented by the facts of this ease, there is an apparent conflict between the ninety-day period within which an appeal may be taken from a determination by the Director of Taxation and the four-year period for requesting a refund. That seeming conflict is resolved by N.J.S.A 54:32B-20(b),[7] which provides that when a taxpayer has had a hearing, or has had the opportunity for a hearing and failed to avail himself of such a hearing, and payment is subsequently made, the four-year *139 period for requesting a refund shall not apply.[8] The Director has further clarified that interpretation by regulation as follows:
Items previously assessed
Except as provided by N.J.A.C. 18:2-5.7, no claim for refund shall be permitted for items which were previously the subject of an assessment by the Director where the taxpayer was permitted 90 days to protest the assessment pursuant to N.J.S.A. 54:49-18, or similar provisions of any particular tax statute. Failure to timely protest the assessment shall be deemed a waiver of the taxpayer’s right for review of that item.
[N.J.A.C. 18:2-5.5 (emphasis added)]
The proper interpretation of the interaction of the ninety-day protest period and the fpur-year refund period was most recently discussed in Toys “R” Us, Inc., supra, 300 N.J.Super. at 168-71, 692 A.2d 111. As the Appellate Division explained, there is good reason for the shorter, ninety-day period to apply to protests of liabilities resulting from an assessment after an audit, rather than the longer, four-year period which applies when a refund is sought with regard to issues never addressed by the Division of Taxation or the taxpayer within the context of the specific tax payments. In stating and explaining the principle, the Appellate Division relied upon a long line of cases starting with Vicoa, Inc. v. Director, Div. of Taxation, 166 N.J.Super. 496, 502, 400 A.2d 105 (App.Div.1979) (Corporation Business Tax), and including Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 388, 345-48 (Tax 1995) (Sales Tax), Don Dan Construction Co. v. Director, Div. of Taxation, 14 N.J.Tax 569, 572 (Tax 1995) (Corporation Business Tax), and Peoples Express Co. v. Director, Div. of *140 Taxation, 10 N.J.Tax 417, 432-33 (Tax 1989) (Corporation Business Tax).[9]
New Jersey’s procedure, which permits only a ninety-day period for filing an appeal with the Tax Court or requesting a hearing with the Division of Taxation after an audit, stands in contrast to the federal procedure and to the procedure in the many states which have adopted the federal procedure. The federal procedure allows for the payment of a tax after an assessment and an additional period within which the refund can be demanded in either the Federal District court or Court of Federal Claims. New Jersey law and procedure was compared to the federal procedure in an article discussing the provisions of the Taxpayers’ Bill of Rights. L. 1992, c. 175.
Still, it is important to note that New Jersey law still does not recognize the federal rule that allows taxpayers to pay a tax deficiency and file a claim for refund, thus creating an additional two-year period to pursue a judicial appeal in the tax refund forums of either the District Court or Court of Federal Claims. The New Jersey rule is to the contrary: Evei'y tax deficiency assessment must be appealed within the applicable 90-day perwd or the right to appeal is iirevocably lost because the New Jersey Tax Court, in People’s [Peoples] Express Co. v. Director, Div. of Taxation, 10 N.J.Tax 417 (1989), has held that the two-year refund statute only applies to situations where taxpayers correct an error they made to their filed tax *141 returns and not to situations where the Division of Taxation audited the tax return and issued a final determination for additional taxes.
[Robert J. Alter, What Taxpayers Get From the New Bill of Rights, 133 New Jersey Law Journal 10 (January 4,1993) (emphasis added).J
See also Gifford v. Director, Div. of Taxation, 15 N.J.Tax 51, 58-59 (Tax 1995).
Despite twenty-years of consistent interpretation by the New Jersey courts of this State’s laws with respect to the relationship of the ninety-day appeal period and the four year refund statute.[10] Taxpayer argues that this court should follow a 1995 ruling of the Administrative Law Judges Unit of the New York Division of Tax Appeals. The New Jersey Sales Tax Law is modeled, in part, on New York law. New Jersey Bell Tel. Co. v. Director, Div. of Taxation, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977), certif. den. 75 N.J. 594, 384 A.2d 824 (1978). Nevertheless, post-enactment interpretations of New York law are not binding or even persuasive with respect to New Jersey law when they are in conflict with an almost twenty-year old holding of the Appellate Division of the Superior Court of New Jersey.
The Tax Court has so held in a sales and use tax context.
I And that, in this case, I am in agreement with a conclusion reached by the Appellate Division in Autotote Ltd. v. New Jersey Sports, etc., Auth., 171 N.J.Super. 480, 410 A.2d 52 (App.Div.1979), rev’d on other grounds, 85 N.J. 363, 427 A.2d 55 in which the court remarked.
The interpretation of out-of-state statutes by the courts of the jurisdictions are rarely helpful in providing an appropriate key to the interpretation of a New Jersey statute because of differing public policy concepts and objectives. I Id. at 489, 410 A.2d 52.]
[GE Solid State, Inc. v. Director, Div. of Taxation, 11 N J.Tax 320, 341 (Tax 1990), aff’d, 254 N.J.Super. 653, 604 A.2d 189 (App.Div.1992), rev’d on other grounds, 132 N.J. 298, 625 A.2d 468 (1993). |
If taxes had been paid with respect to transactions which formed the basis of the 1995 assessment, Amplicon had adequate time during the audit so to demonstrate and to obtain a reduction in the assessment. Taxpayer was able to demonstrate to the Division of Taxation that some of the transactions upon which the *142 original assessment was based (which appear to be similar to the ones involved in the case before me) should not have been taxed. The Division, in fact, reduced its assessment to take account of that proof. Thus, had Taxpayer made inquiry of its vendors and customers in a timely fashion during the audit period, Taxpayer could have proved, within the ninety-day appeal period, what it now claims to be able to prove. The fact that, after the audit, Taxpayer hired a new, and one presumes more thorough, tax manager, does not extend the appeal period. Taxpayer asserts that it discovered the payment with respect to its lease transactions to Trump’s and others after 1995, when Taxpayer made inquiry of those customers and demanded payment of the tax in order to reimburse Taxpayer, in part, for its $445,000 páyment to the Division of Taxation. There is no question that similar inquiry could have been made to other vendors and customers within the applicable time period. If responses had not been received, a request for a further hearing could have been made; an appeal could have been filed at that time.
Consistent with the revisions of the New Jersey Sales and Use Tax with regard to leases effective in 1989, Taxpayer was the appropriate party to pay the tax, and, if the tax were paid twice, then a refund, if due to anyone, would be due to Taxpayer’s customers or those other parties paying the tax. That tax was paid in 1989, and not even the four-year statute of limitations would have permitted a refund in 1997 for a tax payment in 1989 (the date of the Trump’s transaction).
Statutes of limitations impose artificial constraints on the gathering of information and the fixing of tax liabilities. The reason for those artificial constraints is well explained; it is important that filing deadlines and statutes of limitations be strictly applied in tax matters. F.M.C. Stores Co. v. Morris Plains Bor., 100 N.J. 418, 425, 495 A.2d 1313 (1985).
A proper reading of N.J.S.A. 54:32B-20(b), Vicoa, Inc. v. Director, supra, 166 N.J.Super. 496, 400 A.2d 105, and the cases which have followed its ruling, when applied to the facts in this case, clearly indicates that the ninety-day statute of limitations is *143 applicable, the four-year refund claim period is not, and Taxpayer is simply out of time in its demand for a refund.
III.

There is No Basis for Extending the Ninety-day Appeal Period

Taxpayer argues that under Toys “R” Us, Inc. v. Director, Div. of Taxation, supra, 300 N.J.Super. 163, 692 A.2d 111, it is entitled to seek discovery and prove that the Division knew that it was “double dipping.” Taxpayer asserts that it made such a request for information during the 1995 audit and was rebuffed. Taxpayer could have pursued that theory of this case by filing an appeal at that time and making the discovery request in the context of that timely appeal. Instead, Taxpayer abandoned “double dipping” and all other issues, and paid the tax as assessed. Now, over two years later, it argues it can change its mind and reopen issues abandoned in 1995. Even if the issue of “double dipping” is relevant as a matter of substantive law, there is no right to seek discovery of facts discoverable and sought in 1995, two years after that search was abandoned, and well after the expiration of the applicable statute of limitations for challenging the assessment. To the extent that Taxpayer identified additional customers who had paid tax after the 1995 audit assessment, that was a result of the more efficient new tax manager’s investigations. All of the information was discoverable in 1995.
In Toys “It” Us, the Appellate Division recited the rule in Vicoa, and reaffirmed its statutory and logical basis. That rule is that the refund statute of limitations does not apply in those cases in which a payment is made after an assessment by the Director. In those cases, any challenge to the assessment or claim for refund must be made within ninety days. In Toys “R” Us, the Appellate Division remanded the matter to permit a determination as to when the Division of Taxation adopted a general policy that certain transactions were not subject to tax, since an auditor for the Division of Taxation told the taxpayer under audit that those transactions were subject to tax. The court implicitly found that it was the auditor’s explanation of the law which caused the *144 taxpayer to pay a tax which both parties agreed, under the revised notice of the Division of Taxation, was no longer due. Id. at 166, 692 A.2d 111. But see Black Whale v. Director, supra, 15 N.J.Tax at 351-57. When taxpayer discovered the revised policy in a Division of Taxation publication, less than 110 days after the assessment had been made (and only twenty days beyond the expiration of the ninety-day appeal period), it sought the refund. The Appellate Division remanded the matter for further factual findings, despite its discussion of the longstanding strict rule with regard to timely challenges to audit assessments.
In Peoples Express, supra, 10 N.J.Tax 417, after an assessment by the Director, the taxpayer paid tax of over $40,000. Eighteen months later, it filed a claim for refund. Still later, the taxpayer provided information that would have resulted in a smaller initial assessment. Id. at 419-20. The court held that, despite the fact that the audit information ultimately submitted would have justified a smaller assessment and a refund, the failure to timely protest the audit assessment was a fatal jurisdictional bar to the claim. Assuming the facts as asserted by the Taxpayer in this case to be true, it is in precisely the same position as was Peoples Express. I can see no reason to rule inconsistently with that ease.
In this case, Taxpayer did not “discover” that taxes had been paid until substantially later than the period elapsed in Toys “R” Us, supra, 300 N.J.Super. 163, 692 A.2d 111. The payments by Taxpayer’s customers which form the basis of the claim before me were not the result of an audit assessment by the Director, but the result of a voluntary payment by the Taxpayer’s customer, or the Taxpayer’s vendors or successors. The likelihood that the Director had any specific knowledge that someone other than the Taxpayer had paid a tax with respect to the transaction for which Taxpayer was assessed is almost nil, given that the Taxpayer’s customers and vendors were not subject to an audit assessment. The assessment period’s statute of limitations and audit procedures are designed to give taxpayers adequate time to make a protest and to gather information which they are in a much better position to know than is the Director of Taxation, who deals with *145 thousands of taxpayer accounts. Taxpayer asked some, but not all, of its customers and vendors about tax payments before hiring its new tax manager, and abandoned its attempt to seek inforcnation from the Director by not protesting the 1995 assessment and by paying it in full.
The provisions of a tax statute may make several parties responsible for collection and payment of a given tax. See N.J.S.A. 54:82B-14(a) and (b) (making vendor primarily responsible for collection of tax and customer secondarily liable). See also N.J.S.A. 54A:7-1 through -6 (making employers responsible for withholding and remitting gross income tax), and N.J.S.A. 54A:8-1 (making employees responsible for payment of the tax). This is a matter of administrative design, and, clearly, as the $87,000 reduction of the Taxpayer’s initial audit indicates, proof that taxes have been paid twice is adequate to cause a reduction in an assessment. Neither the statute nor the procedures of the Division of Taxation are designed to collect more than the tax that is owed, but the responsibility for seeing that tax is not twice paid must rest with the taxpayer and not the Division. Although the fact that tax may have been twice collected may be relevant to a determination of whether an assessment by the Director should be sustained, it is irrelevant as a matter of law with regard to the statute of limitations.
At this time, the question is not whether the tax was twice collected, whether knowingly or otherwise. The question is whether Taxpayer can demonstrate any basis for an equitable exception to the Vicoa rule such as was found in Toys “R” Us. The circumstances here, however, are fundamentally different from Toys “R” Us. There, the Appellate Division permitted a late appeal, if upon remand taxpayer could demonstrate that, at the time of the assessment, the Division was advising other taxpayers that tax was not due on transactions of the same kind that were found taxable in the audit. By its nature this information would not have been known to the taxpayer, which can be said to have relied on the Division’s advice to it in the audit concerning the tax status of the transactions. Here, on the other hand, the possibili *146 ty of a previous tax payment by Taxpayer’s customers is certainly known or knowable by Taxpayer. It had opportunity to identify those payments in the audit and did so as to certain of them. Taxpayer cannot contend essential information was not discoverable during the audit. If a request to the Division was unanswered, that matter was addressable on direct appeal. Taxpayer is actually making a collateral attack on an assessment that became final, after adequate opportunity to address the issue both in the audit and by timely appeal.
I find that the facts in Toys “R” Us, supra, 300 N.J.Super. 163, 692 A.2d 111, and the case before me ¿re substantially different. I find that the facts in this case are much closer to those in Peoples Express, supra, 10 N.J.Tax 417, than they are to those in Toys “R” Us, for the following reasons:
(1) In Toys “R” Us, it appears that the Director may have been enunciating one policy for the general public and another for the taxpayer under audit (or perhaps different policies for different taxpayers), whereas, in the case before me, the Division was announcing one assessment with regard to Amplicon and had never addressed the issue with regard to any other taxpayers who may have voluntarily made such payments. In Peoples Express and this case, the audit information which may have resulted in the reduction of the assessment was available to the taxpayers.
(2) The substantive issue in Toys “R” Us revolved around a proper interpretation of the law; the substantive issue in this case and in People’s Express is whether taxpayer timely presented audit information.
(8) In Toys “R” Us, the demand for a refund was made much sooner than in the case befoi’e me.
Although the timeliness of the requested refund is of no legal significance once the ninety-day appeal period has expired, if concerns of equity are to be introduced in tax refund matters (and the foregoing discussion, and all of the eases with the lone exception of Toys “R” Us, make clear that they should not), there is a world of difference between 110 days and twenty three *147 months. The conclusion of the Appellate Division in Toys “R” Us was a departure from a long line of cases which have held that there is no exception to the ninety-day (previously thirty-day) period for protesting a Director’s assessment. The longer two-year, and now four-year, period for making a refund claim is simply not applicable to those cases in which the Director has made an assessment. Toys “R” Us did not overrule that long line ' of cases, and accordingly, must be limited to its facts. The facts in Toys “R” Us are significantly different from the facts in this case. While alleging “double dipping,” which is not prohibited by the statute, Taxpayer seeks a “second bite of the (audit) apple.”
IV.

The Discovery Rule

Finally, Taxpayer argues that its time to request a refund should only run from the time it discovered that it had overpaid its tax. The discovery rale does not apply to tax refund matters. Keezer v. State, Div. of Taxation, 9 N.J.Tax 264, 270 (Tax 1987). As discussed in detail above, the refund statute does not apply in this case, because, after a tax assessment in New Jersey, the only way to eliminate the assessment is by seeking a conference with the Director or filing a complaint with the Tax Court within ninety days of the assessment.
V.
What Taxpayer describes as equities, may better be described as an incomplete review of the 1995 assessment. I find that, in 1995, Taxpayer made an incomplete presentation to the Division of Taxation of all of the transactions involved in the audit assessment. It would appear, taking as trae the allegations made by Taxpayer, that, in fact, taxes were paid by some of its customers. When similar facts were brought to the attention of the Division of Taxation in 1995, those facts formed the basis of an $87,000 tax reduction. During the period of audit, or within ninety days thereafter, had Amplicon brought the facts with respect to the additional transactions, which are the subject of this appeal, to the *148 attention of the Division of Taxation, it may have been entitled to further reductions in the assessment that was made and paid in 1995. Instead, Taxpayer abandoned its pursuit of information from both its customers and vendors and from the Division of Taxpayer in 1995. In 1997, twenty three months after abandoning its claim, Taxpayer attempted to reopen its claim after having made additional requests of its customers and vendors and having received additional information from them.
The rules with regard to claims for refunds after assessments for taxes in New Jersey are clear. Taxpayer simply filed a late claim. Taxpayer successfully pursued some of its claims in 1995. Ninety days after the final assessment was made, Taxpayer, by failing to- ask for a conference or file a complaint in the Tax Court, as a matter of law abandoned all other claims. To permit an extended statute of limitations in a case like this would result in repeated and endless attempts to seek refunds. Audits would never be closed. The Legislature, by enacting N.J.S.A. 54:32B-20(b), and the courts, in a line of decisions dating back to Vicoa, Inc., supra, 166 N.J.Super. 496, 400 A.2d 105, in 1979, have made it clear that ninety days are ninety days. Finality in such matters is valued (F.M.C. Stores, supra, 100 N.J. at 424-25, 495 A.2d 1313), particularly in light of the Division’s invitation in this ease to Taxpayer to submit further evidence in 1995, and Taxpayer’s failure to make further submissions, request a hearing, or take an appeal for almost two years. Taxpayer’s assertion, at this late date, that it sought and was denied information from the Division of Taxpayer in 1995, is not supported by any evidence. In any event, as a matter of law, such denial cannot justify Taxpayer’s failure to seek a conference or file an appeal within ninety days of the June 28, 1995 assessment. Twenty three months later, when the May 30, 1997 claim for refund was filed, the time within which to challenge the assessment and the payment made pursuant to the assessment had expired.
The Director’s motion is granted, and this matter is dismissed.

 All of Taxpayer's assertions are found in its brief and complaint. Although no affidavits or certifications from Taxpayer support the factual assertions, for purposes of this motion, I have assumed that the facts “discovered" after the 1995 audit were discoverable from Taxpayer's vendors and customers at that time, but that Taxpayer did not seek or find such information.
The facts in a dispositive motion, such as defendant's motion in this case, must be viewed in the light most favorable to the nonmoving party. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995). In order to defeat a motion, issues of material fact must be genuine. There is no evidence before me to indicate that the Division of Taxation consciously taxed transactions *133 twice. There is evidence that, during the original audit, when taxpayer presented proof that transactions were taxed twice, the assessments were reduced.

 The transactions which form the basis of the Amplicon refund claims were finance leases. A "finance lease" is a transaction which, for tax and other reasons is structured as a lease, but is, in reality, a transaction in which the "lessor" provides secured financing to the "lessee" so that the lessee can acquire goods from a supplier. See generally M.J.S.A. 12A:2A-103(g), and the applicable comment to the Uniform Commercial Code. See also Equipment Leasing— Leveraged Leasing 42-43 (Feitch, Reisman & Shrank, eds., 3d ed.1988). Though the documentation reflecting the transaction is that of a lease, the reality of the transaction is that oí a secured financing. The three parties to the transaction, the supplier, the lessor (lender), and the lessee (purchaser and borrower), do not always conform their behavior to the documentation reflecting the formal lease structure of the transaction. That appears to be what happened in the Trump's transaction. See discussion at Section I., below, of this opinion. The documents reflect a lease and require that sales tax be paid by Amplicon; the payment of tax by Trump's to ACSI reflects a sale by ACSI to Trump's, with Amplicon merely financing the sale. It would appear that the 1995 audit assessment was based on the documented lease transaction from Amplicon to Trump's, while the late-discovered payment to ACSI was based on a purchase by Trump's from ACSI.
It is the law in New Jersey that tax consequences follow the formalities of a transaction. General Trading v. Director, Div. of Taxation, 83 N.J. 122, 136-38, 416 A.2d 37 (1980). Although the substance of the subject transaction may *134 have been a secured financing, the parties chose to structure it as a lease, and the sales lax consequences must follow that form.

 See Section II. of this opinion, infra. See also N.J.S.A. 54:32B-20.

 54:32B-19. Determination of tax. If a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, pui chases, rental paid, number of rooms, location, scale of rents or charges, comparable rents or charges, type of accommodations and service, number of employees or other factors. Notice of such determination shall be given to the person liable for the collection or payment of the tax. Subject to the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq., suck determination shall finally and irrevocably fix the tax unless the person against whom it is assessed, within 90 days after giving of notice of such determination, shall apply to the director for a hearing, or unless the director of his own motion shall redetermine the same. After such hearing, the director shall give notice of his determination to the person against whom the tax is assessed. [Emphasis added]

 54:32B-21. Review of director's decision, (a) Appeal to tax court. Any aggrieved taxpayer may, within 90 days after any decision, order, finding, assessment or action of the Director of Taxation made pursuant to the provisions of this act, appeal thereirom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law. R.S. 54:48-1 et seq. (b) Appeal exclusive remedy of taxpayer. The appeal provided by this section shall be the exclusive *138 remedy available to any taxpayer for review of a decision of the director in respect of the determination of the liability of the taxpayer for the taxes imposed by this act.

 54:32B-20. Refunds, (a) In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within four years from the payment thereof. Such application may be made by a customer who has actually paid the tax. Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, provided that the application is made within four years of the payment to him by the customer, but no actual refund of moneys shall be made to such person until he shall first establish to the satisfaction of the director, under such regulations as he may prescribe, that he has repaid to the customer the amount for which the application for refund is made. The director may, in lieu of any refund, allow credit on payments due from the applicant.
(Prior to July 1, 1992, the effective date of the Taxpayers' Bill of Rights, L. 1992, c. 175, the refund period was two years.)

 54:32B-20(b). A person shall not be entitled to a revision, refund or credit under this section of a tax, interest or penalty which had been determined to be due pursuant to the provisions of section 19 where he has had a hearing or an opportunity for a hearing as provided in said section or has failed to avail himself of the remedies therein provided. No refund or credit shall be made of a tax, interest or penalty paid after a determination by the director made pursuant to section 19 unless it be found that such determination was erroneous, illegal or unconstitutional or otherwise improper, pursuant to law, in which event refund or credit shall be made of the tax, interest or penalty found to have been overpaid. (Emphasis added.)

 The second sentence of this subsection of the statute provides a standard for the payment of refunds after a hearing by the Director under section 19. It does not, as Taxpayer contends, extend the refund period after a taxpayer has had the opportunity for a ninety-day hearing. Subsections 20(a) and (b) of the statute deal with refunds. Subsection (a) provides a standard and time period for refunds when there has been no audit. Subsection (b) provides a standard for refunds made after an audit and a ninety-day hearing held after an audit (second sentence). The first sentence of subsection (b) explicitly prohibits a refund claim made after a hearing is concluded or the mnet}'-day appeal period has lapsed without an appeal or a request for a hearing.

 The above-cited cases discuss statute of limitations issues and the difference in the time period for refund claims after or absent a Director's assessment. The cases deal with both the Corporation Business Tax (N.J.S.A. 54:10A-1 through - 40) and the Sales and Use Tax (N.J.S.A. 54:32B-1 through -27). The separate procedural provisions of both statutes, as well as the State Tax Uniform Procedure Law (N.J.S.A. 54:48-1 through :50-28), are discussed in these cases. The procedural pattern is the same under both the Corporation Business Tax and the Sales and Use Tax. In fact, in the discussion of these issues in Toys “R" Us, supra, 300 N.J.Super. 163, 692 A.2d 111, a Sales and Use Tax case, the Appellate Division made frequent reference to the Corporation Business Tax statute (N.J.S.A. 54:10A-19.2) as authority for its analysis. Id. at 168-171, 692 A.2d 111. Thus, although three separate statutes impacting on two different taxes describe time limitations applicable to refund claims after and absent an audit assessment by the Director of Taxation, our courts have recognized that the rules applicable to both taxes are the same and have cited one tax's procedural provisions as authority for the rule applicable to the other tax. I rely on the more detailed provisions of the Sales and Use Tax statute, but find authority for their interpretation in cases which deal with the Corporation Business Tax, as well.

 Prior to the amendment, of N.J.S.A 54:49-14 by L.1992, c 175, § 5, The time limit for filing refund claims was two years.