HOPKINS, J.T.C.
Plaintiff (taxpayer) seeks a refund of 1980 and 1981 business personal property (BPP) taxes paid. In the event taxpayer’s refund is barred by the statute of limitations, it requests that the BPP tax overpayment be setoff against taxpayer’s sales and use tax liability.
Taxpayer, a corporation which maintains its principal offices in Greenwich, Connecticut, manufactures and sells wall coverings and plastic products both within and without the State of New Jersey. In the late 1970s, taxpayer acquired all of the outstanding shares of stock of another corporation, Panta Astor, Inc. (Panta). This acquisition included Panta’s operations in Kearny, Butler and Passaic, New Jersey. On January *162 8,1980, taxpayer completed a reorganization pursuant to which Panta was merged into and became a division of taxpayer.
In 1977, the New Jersey Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq., was amended to exempt machinery and equipment acquired on or after January 1, 1977 from BPP tax. N.J.S.A. 54:11A-3.1. As a result, the machinery and equipment acquired by taxpayer on January 8, 1980, through merger, was deemed exempt from BPP tax for 1980 and subsequent years.
BPP tax returns are due on or before February 15 of the tax year. The tax is payable in two equal installments; the first installment is payable when the annual return is required to be filed and the second installment becomes due on September 15 following that filing date. N.J.S.A. 54:llA-7 and -8.
On February 15, 1980, taxpayer filed a BPP tax return for 1980 reporting a total amount due of $48,636.73. The first installment of tax due in the amount of $24,318.37 was paid on that date and the second installment in the amount of $24,-318.36 was paid on September 12, 1980.
On February 13, 1981, taxpayer filed a BPP tax return for 1981 reporting a total amount due of $47,002.18. The first installment of $23,501.08 was paid on that date and the remaining portion of $23,501.10 was paid on September 11, 1981.
Between November 1982 and July 1983, Director, Division of Taxation (Director) conducted a field audit of taxpayer’s operations with respect to various state taxes. The audit period for BPP tax was tax years 1978 through 1982. The audit period for sales and use taxes was October 1, 1979 through December 31, 1982.
On November 17, 1982, at the start of the audit period, taxpayer executed a “Consent Fixing Period of Limitation Upon Assessment of New Jersey Taxes” (consent) pursuant to N.J. S.A. 54:11A-I2(b), which, inter alia, provided that the period during which the assessment of additional BPP taxes could be made was on or before January 31, 1984.
*163 On July 20, 1983, Director’s auditor sent taxpayer his audit worksheets which showed that taxpayer had underpaid its BPP taxes for each of the five years of the audit period, 1978 through 1982, and that taxpayer would be assessed additional taxes. Subsequently, on September 15, 1983, the auditor sent taxpayer a revised worksheet indicating that taxpayer would not be assessed additional BPP taxes for 1980, 1981 and 1982. Rather, taxpayer had overpaid such tax for those years by $48,636.73, $47,002.18 and $40,117.59, respectively. These over-payments were due to the 1980 merger of Panta with taxpayer and the 1977 amendment to the BPP Tax Act. N.J.S.A. 54:11A-3.1.
On September 30, 1983, Director sent taxpayer a notice of assessment, with attachments, showing an additional assessment of BPP taxes for 1978 and 1979 totaling $31,611.28, plus penalty and interest, together with an additional assessment of sales and use taxes for the audit period totaling $36,958.66, plus penalty and interest.
On October 12, 1983, Director advised taxpayer that the September 30, 1983 notice of assessment was being reviewed because of a possible refund due to BPP taxes. On October 27, 1983, Director sent taxpayer an amended notice of assessment, with attachments, showing that the 1978 and 1979 BPP tax assessments of $31,611.28, plus interest in the amount of $10,-265.89, was being offset by $41,877.17 in BPP taxes which taxpayer had overpaid for 1982 and 1983. In addition, the amended notice of assessment showed that the sales and use tax assessment of $36,958.66 was being partially offset by the remainder of BPP taxes, in the amount of $25,441.22, which taxpayer had overpaid for 1982 and 1983. Thus, the amended notice of assessment showed a balance due of $11,517.44, plus interest, attributable to the sales and use tax liability. Director’s cover letter to this amended notice of assessment also advised taxpayer that the 1980 and 1981 overpayments of BPP taxes could not be refunded because of the two-year statute of limitations.
*164 In its final determination letter dated January 9, 1984, Director assessed an additional sales and use tax of $9,958.39, plus interest, after crediting taxpayer an additional $1,564.05 due to a mistake in calculating the 1982 and 1983 BPP tax overpayments.
On January 25, 1984, taxpayer submitted refund claims to Director for the BPP taxes paid in 1980 and 1981. Taxpayer commenced this action on April 6, 1984.
The BPP tax act provides that it shall be governed in all respects by the State Tax Uniform Procedure Law except to the extent that a specific provision may be in conflict therewith. N.J.S.A. 54:llA-20. The State Tax Uniform Procedure Law provides as follows:
Any taxpayer, at any time within two years after the payment of any original or additional tax assessed against him, unless a shorter limit is fixed by the law imposing the tax, may file with the commissioner a claim under oath for refund, in such form as the commissioner may prescribe, stating the grounds therefor. ... [N.J.S.A. 54:49-14]
The BPP tax act also provided that the Director had the authority to make provisions he deemed necessary for the administration of the BPP act. Pursuant thereto, N.J.A.C. 18:9-5.13 was promulgated. That regulation, with a reference to the State Tax Uniform Procedure Law, iterated the two-year limitation on filing refund claims.
 Statutory filing deadlines pertaining to tax matters are jurisdictional and if not complied with, an otherwise eligible taxpayer waives his entitlement to any refund. Riteway Rentals v. Motor Vehicles Div. Director, 2 N.J.Tax 117, 119 (Tax Ct.1981); Commercial Refrigeration, Etc. v. Taxation Div. Director, 2 N.J.Tax 415, 419, 184 N.J.Super. 387, 446 A.2d 210 (Tax Ct.1981). After the two-year limitation period for the filing of a refund application has passed, the State is entitled to assume that its tax revenues need not be refunded under any circumstances. Commercial Refrigeration, supra, at 419, 387 A.2d 210. As stated by the court in McCullough Transp. Co. v. Div. of Motor Vehicles, 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div.1971):
*165 Limitation periods for claims for refunds are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies.
Taxpayer made its original BPP tax payments for 1980 and 1981 on February 15, 1980, September 12, 1980, February 13, 1981 and September 11, 1981. Applying the provisions of N.J.S.A. 54:49-14 and N.J.A.C. 18:9-5.13, taxpayer was required to file its refund claims with respect to each original payment by February 15, 1982, February 13, 1983 and September 11, 1983, respectively. Since taxpayer filed its refund claims over two years after the dates of original payments, taxpayer is not entitled to any refund.
The fact that taxpayer executed a consent, pursuant to N.J.S.A. 54:11A-I2(b), does not alter this result. That statute provides, in part, as follows:
Except in the case of a willfully false or fraudulent return with intent to evade the tax, no assessment of additional tax shall be made after the expiration of more than 5 years from the date of the filing of a return; ____ Where, before the expiration of the period prescribed herein for the assessment of an additional tax, a taxpayer has consented in writing that such period may be extended, the amount of such additional tax due may be determined at any time within such extended period. The period so extended may be further extended by subsequent consents in writing made before the expiration of the extended period.
Nowhere does the statute provide that an extension of the assessment period also extends the period within which a taxpayer may file a claim for refund. Nor is it proper, in light of the Legislature’s objectives of ensuring the predictability of revenues, to read such provision into the statute. As stated in Badaracco v. C.I.R., 464 US. 386, 104 S.Ct. 756, 78 L.Ed.2A 549 (1984): “Courts are not authorized to rewrite a statute because they might deem its effect susceptible of improvement, and that is especially so when courts construe a statute of limitations, which must receive a strict construction in favor of the government.” Id. 104 S.Ct. at 764. The statutory language is clear and unambiguous and therefore not open to construction. Watt v. Mayor and Council of the Borough of Franklin, 21 N.J. 274, 121 A.2d 499 (1956).
*166 Taxpayer’s argument that it is inequitable for Director to have five years within which to make additional assessments when a taxpayer has only two years to seek a refund was adequately addressed by the court in Bristol-Myers Co. v. Taxation Div. Director, 3 N.J.Tax 451, 459 (Tax Ct.1981). In Bristol Myers, the taxpayer filed refund claims in February 1979 for corporation business taxes paid for the years 1971 through 1976[1]. In September 1977, following an audit, the Director had assessed taxpayer additional corporation business taxes for the years 1971 through 1975. The 1977 additional assessment was not contested and was unrelated to the taxpayer’s refund claims except to the extent that the taxpayer claimed it had two years from the date of the September 1977 additional assessment within which to apply for a refund and therefore its February 1979 refund claims were timely. In dismissing the taxpayer’s demands for refund, the court stated:
[W]hat is at issue is a matter of policy. Limitation periods for claims of refunds are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies. McCullough Transp. Co. v. Motor Vehicles Div., 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div.1971). Cf. Wm. Eisenberg & Sons, Inc. v. Martin, 120 N.J.L. 348, 199 A. 723 (Sup.Ct.1938). The Legislature has established the respective periods of time within which the parties must act under the circumstances of this case and it is not the prerogative of the court to question that determination.
Plaintiff’s refund claims for the years 1971 through 1975 were not filed with the director within the two-year period provided in N.J.S.A. 54:49-14. The fact that the Director assessed an additional tax against plaintiff for the same years was irrelevant in the context of this case because the additional assessment was not related to the issues plaintiff raised in its refund claims filed with the Director. The assessment of additional tax not related to the issue raised in the refund claims did not extend the two-year period for the filing of refund claims established by the Legislature. The Legislature intended the two-year period to be mandatory, and since plaintiff did not comply with this limitation the court can give it no relief. McCullough Transp. Co. v. Motor Vehicles Div., supra. [at 459]
The fact that the Legislature provided under the Sales and Use Tax Act, N.J.S.A., 54:32B-1 et seq., and the Gross Income *167 Tax Act, N.J.S.A. 54:9-1 et seq., that a consent extending an assessment period also extends the refund claim period is not relevant. Taxpayer alludes to the doctrine of “equity of the statute” in arguing that “had the Legislature considered the effect a consent extending an assessment period would have on a refund claim, the appropriate provision extending the refund period would have been put in the business personal property tax statute.”
Contrary to taxpayer’s argument, the answer to such proposition was set out in Dvorkin v. Dover Tp., 29 N.J. 303, 148 A.2d 793 (1959), where it was stated:
We might add that the “equity of the statute” rule does not, when properly applied, substitute the judicial for the legislative will, but rather in the consideration of all the material elements reaches the result probably intended by the draftsman had he anticipated the situation at hand. Indeed, to hold otherwise in the absence of considerations clearly requiring such a contrary construction, is to claim for the judiciary a monopoly on the ability to perceive the justice of a cause, [at 315, 148 A.2d 793]
Further, the fact that a refund extension period was incorporated into the Sales and Use, as well as, the Gross Income, Tax Acts could indicate that the Legislature was aware of the situation and decided not to provide for a similar provision in the BPP act.
Alternatively, taxpayer requests that the barred BPP tax be offset against its sales and use tax liabilities by virtue of a right of recoupment as a counterclaim.
In order to be entitled to offset the barred BPP taxes against its sales and use tax liability, it must be shown that both taxes arose out of some feature of the same transaction. Beneficial Finance Co. of Atlantic City v. Swaggerty, 86 N.J. 602, 432 A.2d 512 (1981); Bull v. U.S., 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1934). The Beneficial Finance case, wherein New Jersey adopted the federal law in enforcing the provisions of the Federal Truth in Lending Act (TILA), involved a situation where a finance company sued to collect the balance of an unpaid loan. Despite the fact that the one-year period within which a consumer could sue for statutory penalties for failure of the finance company to comply with TILA provisions, the *168 court permitted the penalties to support a recoupment claim to setoff part of the unpaid loan. In so doing, it quoted with approval from Bull v. U.S., supra, as follows:
[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff’s action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely, [at 262, 55 S.Ct. at 700]
The Bull case involved a situation where the decedent was a member of a partnership which had earned income subsequent to his death and which was, pursuant to the partnership agreement, payable to his estate. The subsequently earned income was included in the decedent’s estate tax return and was also subjected to federal income tax. In a suit for refund, decedent’s estate took a position that the post death partnership income was not subject to income tax or, in the alternative, if the post death partnership earnings were subject to income tax, the estate was entitled to have credited against the income tax liability the amount of the time barred refund of the estate tax which had been paid on the post death partnership income. The court held that since the government had subjected the same amount to both the estate and federal income tax, the taxpayer was entitled to obtain credit for the erroneous estate tax liability under the theory of recoupment since both taxes arose from the same transaction.
Here the barred BPP tax refunds arose from payments for the tax years 1980 and 1981. It was an ad valorem tax on business property acquired in the merger on January 8, 1980. The sales and use tax, on the other hand, which is composed of two parts, was applicable to the October 1, 1979 through December 31, 1982 audit period. The sales tax is a transactional tax on receipts from sales of property. Taxpayer was required to collect the tax from the vendee and turn such proceeds over to the State. The use tax would arise when taxpayer used property which it manufactured or purchased without paying an equivalent sales tax. N.J.S.A. 54:32B-12, -13.
*169 The BPP tax and the sales and use tax are two wholly different taxes arising out of different circumstances. Since there is no showing that the business personal property on which the BPP tax was based was in any manner affected by or created any impact on taxpayer’s sales and use tax liabilities, there is no transactional nexus to support the claim of recoupment.
Further, there is no basis for taxpayer’s attempt to support the recoupment contention by claiming that the transactional nexus was satisfied by the consent which was executed by the parties. That document could only affect the statutory assessment period and not the basis on which the tax was asserted. Moreover, that consent was meaningless within the context of the 1980 and 1981 BPP taxes since it did not extend the assessment period beyond the time already allowed by statute.
Judgment will be entered dismissing taxpayer’s complaint.

 The Director did not challenge the timeliness of the refund claim for 1976 and the refund claim for that year was not included in the court's decision. Bristol-Myers, supra, at 454, 459.