692 A.2d 111

TOYS "R" US, INC. (FORMERLY KNOWN AS TOYS–R–US, N.J., INC.), PLAINTIFF–APPELLANT, v. DIRECTOR, NEW JERSEY DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1996—Decided April 29, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Richard I. Miller* argued the cause for appellant (*Harold Leib,* attorney; *Messrs. Leib and Miller,* on the brief).

*Joseph Fogelson,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Fogelson,* on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

The New Jersey Division of Taxation audited the plaintiff. A deficiency assessment was imposed which included sales and use taxes imposed on labels. Plaintiff paid the assessment. Plaintiff later learned that the Division had changed its policy and no longer imposed sales and use taxes on labels. Plaintiff's claim for a refund was denied by the Division on the ground that the claim was filed too late. The Tax Court affirmed the denial by summary judgment on basically the same ground. Plaintiff appeals.

After a careful review of the record and the arguments presented, we conclude that plaintiff may have equitable grounds for tolling the statute of limitations. We reverse and remand for a hearing on this issue.

## I

Plaintiff affixes labels to its goods before shipping them to its warehouses and its retail stores. Additional labels, which specify the price, size and style of its goods, are affixed in plaintiff's retail outlets.

A field agent of the Division conducted an audit of the plaintiff's records in 1990. The period of the audit was from April 1, 1985 to September 30, 1988. As a result of the audit, the Division on February 28, 1991 assessed plaintiff some $743,000 in additional taxes. This assessment was reduced on April 8, 1991 to $463,000. The taxpayer paid the assessment on or about April 15, 1991. Apparently $99,000 of the additional tax liability was attributable to taxes imposed on the sale and use of labels during the audited period. This is the sum plaintiff seeks to recover.

The State sales tax is imposed upon "[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this act." *N.J.S.A.* 54:32B–3. However, an exception is made for identification and price labels. *N.J.S.A.* 54:32B–8.15. That statute provides:

> [s]ales or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers, reusable milk containers and all other wrapping supplies when such use is incidental to the delivery of any personal property are exempt from the tax imposed under the Sales and Use Tax Act.
>
> [*Ibid.*]

The *New Jersey State Tax News* is a bi-monthly newsletter published by the Division. *Airwork Serv. Div. v. Director, Div. of Taxation,* 97 *N.J.* 290, 295, 478 *A.*2d 729 (1984), *cert. denied,* 471 *U.S.* 1127, 105 *S.Ct.* 2662, 86 *L.Ed.*2d 278 (1985). In the March/ April 1981 edition of the *State Tax News,* the Director of the Division set forth the following interpretation of the exception:

> [s]ubsection 8.15 of the New Jersey Sales and Use Tax Act (*N.J.S.A.* 54:32B–8.15) concerns wrapping supplies and exempts from taxation, "sales or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers, reusable milk containers and all other wrapping supplies when such use is incidental to the delivery of any personal property." *Labels upon which the ultimate user will imprint prices and other descriptive information relative to the product are subject to tax since such use is not incidental to the delivery of the*

*product.* Exempt labels are of a sort which may wrap the tin or carton in question and are delivered with the product as an aspect of the item's packaging.

[*State Tax News,* March/April 1981, at 35 (emphasis added).]

The field agent relying on the above opinion took the position that the labels used by the plaintiff did not come within the exception and were, therefore, subject to the sales and use tax. Plaintiff states in its verified complaint:

[t]he Auditor cited alleged authority for such assessment and in order to avoid the necessity of litigation to overcome the Director's pronouncements, the Plaintiff acceded to the assessment. Plaintiff clearly relied on the integrity and knowledge of the auditor when acceding to the assessment.

In the March/April 1991 edition of the *New Jersey State Tax News,* the Division published a superseding notice as follows:

[Editors note: The following supersedes a previous Tax Brief on this topic published in *New Jersey State Tax News* March/April 1981 (Vol.10, No. 2), p. 35.]
. . .

The Division has taken the position that labels which are affixed to personal property to be sold and which are actually transferred to the purchaser are exempt. *Thus, labels that specify price, size, style, etc., and which are attached to the product upon sale are exempt from the sales and use tax.*

[*New Jersey State Tax News,* March/April 1991, at 38 (emphasis added).]

The parties agree that pursuant to this superseding notice, plaintiff's labels are exempt from the sales and use tax.

At oral argument, the attorney for the Division was unable to advise us when the Division first took the position that the labels were exempt. After oral argument, we received from the attorney for the Division a copy of a letter from the Division dated March 13, 1991. The letter was in response to an inquiry concerning the taxability of various business supplies, including labels. The Division stated in the letter that

The Division *has taken the position* that labels that are affixed to personal property to be sold or otherwise transferred are exempt. Thus, labels that specify price, size, style etc., and which are attached to the product upon sale are exempt from sales and use tax.

[ (emphasis added).]

We have not been furnished with any other information as to when the Division first took this position. It appears from the letter that the Division had taken this new position sometime prior

to March 13, 1991 which means that it was taken at least a month before the plaintiff paid the assessment. However, we are unable to determine from the record whether the Division's new position was taken before or after the February 28, 1991 assessment against plaintiff.

Plaintiff became aware of the Division's new position in July 1991, when plaintiff's Director of Taxation read the March/April 1991 edition of the *New Jersey State Tax News*. Plaintiff promptly filed a refund claim with the Division on July 23, 1991 seeking a refund of the tax assessed on the labels during the audited period. The claim was made approximately five months after the original assessment and more than three months after the revised assessment, but within the period of time that the Division could have assessed additional taxes.

The Division denied the refund application on October 16, 1992. The Division's position was that the taxpayer should have filed an administrative appeal of the Division's determination within thirty days or filed a complaint with the Tax Court within ninety days of the Division's determination.

Plaintiff then filed an administrative appeal with the Division on November 10, 1992. On January 14, 1994, the Division issued a final determination affirming its prior denial of the refund claim.

Plaintiff filed a complaint on April 4, 1994 with the New Jersey Tax Court. Plaintiff moved for summary judgment and the Division cross-moved for summary judgment. The Tax Court judge granted summary judgment to the Division on the ground that the refund claim was untimely.

Plaintiff contends that its refund claim should be deemed a timely protest of the assessment because it was filed within the period in which the Division could have assessed additional taxes. Plaintiff also contends that the Tax Court judge erred because he "focused on the date Plaintiff became aware of the corrected policy rather than the date the Division of Taxation adopted the corrected policy for publication."

Plaintiff maintains that it is unfair to permit the Division to reap the benefits of favorable changes in policy arising during the period that additional taxes could be imposed, while the taxpayer is given only a ninety-day period following the original determination to benefit from a policy correction by the Division which favors the taxpayer. The plaintiff argues that the Division should be "accountable to taxpayers when statutory or policy changes are made during the period in which the file is open and the Division of Taxation has the right to make additional assessments against the taxpayer[s]."

## II

If a tax, penalty or interest charged to a taxpayer is erroneous, illegal or unconstitutionally collected or paid, the taxpayer may seek a refund. *N.J.S.A.* 54:32B–20(a).

Under the statutes applicable in 1991, the refund must be sought within two years of payment "unless a shorter limit is fixed by the law imposing the tax." *See N.J.S.A.* 54:49–14; *N.J.S.A.* 54:32B–20(a); *see also Vicoa, Inc. v. Director, Div. of Taxation,* 166 *N.J.Super.* 496, 501–02, 400 *A.*2d 105 (App.Div.1979). Under the Taxpayer Bill of Rights effective December 10, 1992, a taxpayer now has four years in which to request a refund of a sales or use tax assessed against the taxpayer. *N.J.S.A.* 54:49–14(a).

■ The two-year refund period set forth in *N.J.S.A.* 54:49–14 and *N.J.S.A.* 54:32B–20(a) does not apply to taxpayers seeking a refund of taxes which have been assessed by the Division. *Don Dan Constr. Co. v. Director, Div. of Taxation,* 14 *N.J. Tax* 569, 572 (Tax Ct.1995); *see also Vicoa, supra,* 166 *N.J.Super.* at 502, 400 *A.*2d 105. In assessment cases, the taxpayer must file an administrative appeal with the Division within thirty days of receipt of the assessment, *see N.J.S.A.* 54:32B–19 (current version, effective December 1992, allows ninety days), or file a complaint in the Tax Court within ninety days. *N.J.S.A.* 54:10A–19.2; *see also N.J.S.A.* 54:32B–21.

If a refund is sought by a taxpayer who has consented to extend the period in which the Division may impose an additional tax, then an application for refund must be filed within six months after the extended period has expired. *N.J.S.A.* 54:32B–27(c). In the present case, plaintiff consented to an extension of that period and filed its claim for refund before the expiration of the six-month period within which the Division could have assessed additional taxes. However, the six month period applies by its terms only to claims filed "pursuant to section 20." *N.J.S.A.* 54:32B–27(c) (referring to *N.J.S.A.* 54:32B–20). The claim in this case was not filed pursuant to section 20 because the plaintiff is seeking a refund of taxes assessed by the Division. Consequently, the plaintiff may not rely on this statute.

▪ Thus, the ninety day limitation period in *N.J.S.A.* 54:10A–19.2 is the applicable time period. The reason for this was explained in *Vicoa, supra,* as follows:

> It is reasonable that a corporation which pays taxes on the basis of its own calculations should have a longer interval in which to discover an error and claim a refund. On the other hand, it is just as reasonable to require a corporation which desires to contest a determination of the Director to have a comparatively shorter interval within which to do so. To interpret the statutes as appellant argues for all practical purposes would convert the three-month period under *N.J.S.A.* 54:10A–19.2(a) into a much greater period in any case where the corporate taxpayer wants to extend the time. This would result in the former statute's being practically a nullity [-] a result which should not be tolerated.
>
> [166 *N.J.Super.* at 502–03, 400 *A.*2d 105.]

Our decision in *Vicoa,* was followed by the Tax Court in *Peoples Express Co. v. Director, Div. of Taxation,* 10 *N.J. Tax* 417 (Tax Ct.1989). The Tax Court said

> The crucial distinction between these statutes is that the two-year statutes of limitation, *N.J.S.A.* 54:49–14 and –16, apply when a self-assessing tax, such as the corporate business tax, is voluntarily calculated and paid by the taxpayer, but it is subsequently discovered by the taxpayer that an error was made and that a refund is due on the original assessment. *N.J.S.A.* 54:10A–19.2, however, provides for a shorter period of appeal because it is activated only *after* some action has been taken by the Director against the taxpayer. Under the latter circumstance, since the taxpayer has received notice of a tax deficiency from the Director, and there is a specific date from which the appeal begins to run, the taxpayer must then act within the specified period of time or relinquish any rights to a subsequent appeal.
>
> [*Id.* at 432.]

Other Tax Court decisions support the statutory interpretation in *Vicoa* and *Peoples Express.* *See Black Whale, Inc. v. Director, Div. of Taxation,* 15 *N.J. Tax* 338, 345–48 (Tax Ct.1995) (if a payment is made after an assessment by the Director, the two-year refund provision is inoperative. In that case, a taxpayer can only protest the assessment by asking for a hearing with the Director of the Division of Taxation within thirty days (now ninety days) or by filing an appeal with the Tax Court within ninety days from the date of the assessment.); *Don Dan, supra,* 14 *N.J. Tax* at 572–74 (the two-year refund statute does not apply to a payment to satisfy an assessment or other determination by the Division); *Pantasote, Inc. v. Director, Div. of Taxation,* 8 *N.J. Tax* 160, 164–165 (Tax Ct.1985), (a consent to an extension of the assessment does not also extend the period within which a taxpayer may file a claim for a refund); *Bristol–Myers Co. v. Taxation Div. Director,* 3 *N.J. Tax* 451, 459 (Tax Ct.1981) (the assessment of an additional tax not related to the issue raised in the refund claims did not extend the two year period for the filing of refund claims) *aff'd,* 9 *N.J. Tax* 88 (App.Div.1986), *certif. denied,* 107 *N.J.* 121, 526 *A.2d* 189 (1987).

A long-standing "practical administrative construction" of a statute and legislative acquiescence to that construction should be given great weight by the court. *Body–Rite Repair Co. v. Director, Div. of Taxation,* 89 *N.J.* 540, 545, 446 *A.2d* 515 (1982). Further, strict adherence to statutory time limitations is ordinarily essential in tax matters. *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 424, 495 *A.2d* 1313 (1985). This is due to the "exigencies of taxation and the administration of local government." *Ibid.; see also William McCullough Transp. Co. v. Division of Motor Vehicles,* 113 *N.J.Super.* 353, 360, 273 *A.2d* 786 (App.Div.1971) (limitation periods for claims for tax refunds are administrative provisions "justified by the need for predictability of revenues by public agencies").

Thus, absent estoppel or equitable considerations, the ninety day period of limitations provided by *N.J.S.A.* 54:10A–19.2 would preclude the taxpayer here from a refund.

### III

Plaintiff argues that under the circumstances in this case, the Division should be estopped from relying on the three-month statute. A similar argument was made by the taxpayer in *Airwork, supra.* In that case, the Division had audited the taxpayer twice. Prior to the first audit, the Division had published a press release which indicated that repair charges on articles to be delivered to a purchaser outside of the State for use outside the State were exempt from sales tax. Pursuant to that release, the Division at the time of the first audit made no attempt to collect sales and use taxes for repair services performed by the taxpayer on airplane motors in New Jersey for out-of-state customers. In the second audit, the Division assessed taxes for those repair services.

The Supreme Court majority reasoned that "[t]he issue thus becomes whether the circumstances of this case warrant the unusual remedy of estopping the government from collecting taxes because the taxpayer has assertedly relied on earlier statements by the taxing authority." *Airwork, supra,* 97 *N.J.* at 297, 478 *A.*2d 729.

The Court said that the issue was "extremely fact sensitive." *Ibid.* The Court also said that the publication setting forth the Division's original position was not shown to be the Division's official publication and according to the Division the publication contained inaccuracies and outdated information. Furthermore, the Division was asserting in active litigation the taxability of the transactions in question. *Id.* at 298, 478 *A.*2d 729. In view of these factors weighing in favor of the taxing authority, the majority concluded that the revised interpretation of the sales tax could be applied retroactively. *Id.* at 298, 478 *A.*2d 729. The Court said:

under the circumstances of this case, [we conclude] that when a sales tax statute specifically provides for the taxation of particular transactions and does not explicitly provide for the tax exemption of such transactions, estoppel should not *generally* be available to a subject taxpayer. The strong public and governmental interest in the collection of the tax imposed by the Legislature will *usually* outweigh the asserted reliance by a taxpayer, especially when such reliance is claimed to be based on unofficial statements and equivocal administrative inaction.

[*Airwork, supra,* 97 *N.J.* at 299, 478 *A.*2d 729 (emphasis added).]

The dissent in *Airwork* would not have applied the revised interpretation retroactively. Justice Garibaldi reasoned that

[g]iven the prior published position of the Division, Airwork's understandable reliance on that announced position, the nature of the sales tax, and Airwork's current inability to collect the sales taxes, the retroactive imposition of the sales tax produces such a harsh result that it offends fundamental concepts of fairness relating to agency conduct. I believe that an agency may not reverse itself retroactively when doing so will cause extraordinary detriment to those who have relied in good faith on the agency's prior position. Further, as the imposition of sales tax here allows the state to revise its earlier publicized position without first providing a taxpayer with notice of the change, it violates the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15, governing the administrative rules.

[*Id.* at 303, 478 *A.*2d 729 (Garibaldi, J., dissenting).]

■ In the present case, the facts appear to weigh more heavily in favor of the taxpayer than in *Airwork.* The publication setting forth the Division's original position was an official publication. The record does not reflect that the information was outdated, or that the publication was inaccurate or that the administrative conduct was equivocal. Depending on the time the Division changed its position, its agent may have been mistaken in assessing the tax in the first place. In other words, if the Division had already changed its position, then the assessment was a mistake. Careful examination of the facts is therefore necessary on this "extremely fact sensitive" issue in order to determine the equities and reach a fair result. *See Airwork, supra,* 97 *N.J.* at 297, 478 *A.*2d 729. This approach is consistent with present legislative intent as shown by the enactment of the taxpayer's Bill of Rights. *See Senate Budget and Appropriation Committee Statement,* Assembly, Nos. 385 and 1474—L.1992, c. 175. (Taxpayers should be accorded "basic rights of fair and equitable treatment.")

In sum, we agree with the Division's construction of the various statutes of limitation. In the absence of estoppel or other equitable considerations, plaintiff had to file a claim for a refund within thirty days of the assessment or file a complaint with the Tax Court within ninety days of the assessment. However, grounds for an estoppel or equitable relief may be present in this case. The taxpayer should have an opportunity to establish those grounds.

Reversed and remanded for further proceedings consistent with this opinion.