NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

PEPE FOOD & SPIRITS INC. and
ROBERT GRUMKA, individually,

       Plaintiffs,

       v.

DIRECTOR, DIVISION OF
TAXATION,

       Defendant.

TAX COURT OF NEW JERSEY

DOCKET NO. 010537-2022

CIVIL ACTION

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Decided: June 15, 2026

Jay J. Freireich, Esq., for plaintiff (Freireich LLC, attorneys).

Bao Ngo, Deputy Attorney General, for defendant
(Jennifer Davenport, Attorney General of New Jersey, attorney).

BEDRIN MURRAY, J.T.C.

I.     Introduction

This constitutes the court's opinion with respect to its order to show cause why plaintiffs' complaint should not be dismissed with prejudice for untimeliness under N.J.S.A. 54:49-18 and N.J.S.A. 54:51A-14(a). In this matter, plaintiffs, Pepe

Food & Spirits Inc. ("Pepe") and Robert Grumka ("Grumka"), sole owner of Pepe, (collectively, "plaintiffs") seek a refund of taxes levied from Grumka's bank account pursuant to a certificate of debt entered in favor of defendant, Director, Division of Taxation ("defendant" or the "Director"). The certificate of debt was docketed following plaintiffs' failure to file either a protest with defendant or a complaint in the Tax Court within the prescribed ninety days from receipt of defendant's Notice of Assessment Related to Final Audit Determination, finding Pepe liable for unpaid Corporation Business Tax ("CBT"); Gross Income Tax – Employer Withholding ("GIT-ER"); and Sales Tax ("ST"); and Notice of Finding of Responsible Person Status. See N.J.S.A. 54:49-18(a) and N.J.S.A. 54:51A-14(a), respectively.

In response to the court's order to show cause, plaintiffs contend they are eligible for alternate relief under N.J.S.A. 54:49-14(a), which provides a taxpayer a four-year period within which to file a refund claim "after the payment of any original or additional tax assessed against him…." Ibid. In the alternative, plaintiffs contend that the facts attendant to their failure to timely protest defendant's Notice of Assessment within ninety days warrant application of the doctrine of equitable tolling to this limitation period. Defendant, by way of opposition, argues that the extended four-year refund filing period relied on by plaintiffs applies only to those cases in which the Director has not made a tax assessment. Further, defendant contends that plaintiffs' claim is untimely under N.J.S.A. 54:49-14(b), which allows

a taxpayer to file a refund claim when the Director has made a tax liability determination. In addition, defendant maintains that plaintiffs do not meet the bar for application of the doctrine of equitable tolling to the statutory filing deadline.

For the reasons set forth below, the court concludes that plaintiffs' refund claim cannot prevail under N.J.S.A. 54:49-14(a) or (b), nor is the remedy of equitable tolling appropriate in this matter. Therefore, the court dismisses the complaint with prejudice.

II.     Findings of Fact and Procedural Posture

The material facts are undisputed. Pepe was a New Jersey neighborhood bar that served alcohol and food. Pepe was solely owned by Grumka, who reportedly sold the business on or about December 31, 2014. In a letter dated January 11, 2016, the Director advised plaintiffs that it would be conducting an audit of Pepe's accounting records and supporting documentation. Pepe appointed its accountant, Vito Soranno, C.P.A. ("Soranno"), to serve as its taxpayer representative.

Defendant's conferee, Ericca Greene, certifies that the auditor requested various documents from plaintiffs including CBT returns for tax years 2011 through 2014, forms W-2 and N.J. W-3 for tax years 2013 through 2015, the general ledger for tax year 2014, the sales journal for tax year 2014, the cash disbursement journal for tax year 2014, depreciation schedules for tax years 2012 through 2015, the sales

3

register tapes for tax year 2014, all paid invoices for tax year 2014, and bank statements for tax years 2012 through 2015.

In response to the auditor's request Soranno provided the CBT returns, payroll information for tax year 2013, and paid invoices for tax year 2014. The audit report reflects that the auditor reviewed the CBT returns for 2012 through 2014 and reconstructed Pepe's CBT for that three-year period. The auditor used the 2014 tax year as the sample period as she had paid invoices for that year. The auditor also analyzed W-2s and NJ-W-3s for tax years 2013 and 2014. Soranno reported that Grumka was the sole employee during 2013 and that there was no payroll for year 2014. The auditor assessed additional payroll tax ("GIT-ER") for each of these years. In addition, the auditor confirmed the accuracy of the alcohol purchases reported by Soranno with the Alcohol Beverage Commission. She deemed the food and cigarette purchases to be too low, although Soranno advised her that Pepe did not sell much food and typically gave it away to customers when sporting events were broadcast.

The auditor had an initial conference with Soranno and a few follow-up meetings. At some point, it appears that Soranno became frustrated with the time commitment associated with the audit and advised the auditor to contact Grumka directly. Per the audit report, Grumka was not available nor responsive.

4

Pepe was sold as of December 31, 2014. The audit report notes that when the audit commenced, Pepe was closed and the property was undergoing renovation, purportedly under a new owner. Therefore, the auditor was limited to viewing the place of business from the outside.

In short, the auditor deemed the records provided by or on behalf of Pepe to be insufficient for the purpose of conducting an examination of the filed tax returns for the subject years. In addition, the auditor's workpapers reflect that the consent agreement between the parties extending the assessment deadline was about to expire. As such, the auditor sent the audit "for billing based on estimated assessment."

On May 23, 2017, the Director issued Pepe a Notice of Assessment Related to Final Audit Determination ("Notice of Assessment"). The Notice of Assessment does not disclose whether the tax assessments[1] were additional/deficiency assessments or estimated assessments.[2] Rather, the Notice of Assessment states the basis of the audit thusly: "[a]s a result of a recent audit of your records, the Director . . . has determined that you are liable for the amount of $38,787.62 which includes

---

[1] When not discussing each assessment separately, the court will refer to the assessments collectively.

[2] See Section III B below for a more detailed explanation of the difference between additional and estimated assessments.

penalty and interest." The Notice of Assessment afforded Pepe the opportunity to file an administrative protest with the Director's Conference and Appeals Branch ("CAB"), or to file an appeal with the Tax Court.

Based on a review of the audit record, the court is not persuaded that defendant's assessments are wholly estimated.[3] Affording plaintiffs the benefit of all reasonable and legitimate inferences, the court finds that the assessments at issue are additional assessments rather than estimated assessments. The distinction is significant because a taxpayer may file a refund claim for taxes assessed by the Director only in the case of an additional tax assessment. Imposition of an estimated assessment bars such a claim, as more fully set forth below in Section III B.[4]

---

[3] The court's review of the auditor's workpapers reflects that the auditor had sufficient information to reconstruct, rather than estimate, a portion of the assessment. Additionally, the auditor provided a separate worksheet for the GIT, SUT, and CBT tax assessments with line items detailing the assessments for each tax year audited. These worksheets cite the statutes that form the basis for the imposition of each assessment. However, for all three assessments, the statutes cited are: N.J.S.A. 54:49-5 (arbitrary or estimated tax assessments); N.J.S.A. 54:49-6 (additional [3]tax assessments); and N.J.S.A. 54:49-7 (arbitrary tax assessment when a taxpayer intends to conceal his property or himself). Thus, it is unclear which statute applies to which assessment.

[4] A taxpayer is precluded from filing a refund claim under N.J.S.A. 54:49-14(b) if the assessment is estimated or arbitrary. See also N.J.A.C. 18:2-5.5(c)(5). To be clear, the court's finding of an additional tax assessment merely opens the door to an analysis of eligibility under N.J.S.A. 54:49-14(b); it does not guarantee eligibility on its own.

6

On the same date as the Notice of Assessment, defendant issued Grumka a Notice of Finding of Responsible Person Status ("RP Notice"), finding him liable for both the ST and GIT-ER obligations in the amount of $24,540.95. The RP Notice contains a summary of the trust taxes due and a detailed explanation of the taxpayer's statutory appeal rights.

The Notice of Assessment and the RP Notice were sent by certified mail to Pepe and Grumka, and Grumka, respectively, at the same address. A copy of the Notice of Assessment was also mailed to Soranno, plaintiffs' taxpayer representative. The notices sent by certified mail to Pepe and Grumpka were returned to defendant as undeliverable. Defendant then re-sent the Notice of Assessment and RP Notice to plaintiffs by regular mail on June 8, 2017.

The Taxpayer Rights section of the Notice of Assessment and RP Notice provides, in part:

> If you disagree with this notice, you may either (1) submit a written protest and request for an informal hearing with the Conference and Appeals Branch within 90 days of this notice, or (2) file a complaint (with the required fee) with the Tax Court of New Jersey. In addition, if the notice involves an assessment of additional tax and you paid the entire assessment within one year after the time to protest or appeal has expired and you did not file a protest or appeal, you may file a refund claim on Form A-1730 within 450 days after the time to protest or appeal has expired.

The relevant instructions for filing a refund claim follow:

7

In order for the Division [of Taxation] to consider your refund claim you must (1) pay the entire assessment within one year after the time for filing the protest expired, and (2) file the refund claim on Form A-1730 with all supporting documentation within 450 days after the time for filing the protest has expired. [The Division of Taxation] cannot accept Form A-1730 for [estimated or arbitrary assessments] because they are not additional tax assessments and therefore, are not eligible for a refund under the provisions of N.J.S.A. 54:49-14b and N.J.A.C. 18:2-5.5(c)5. . . .[5]

The Notice of Assessment and RP Notice also state that the Director's determination of a refund claim may be appealed by the taxpayer to the Tax Court.

Plaintiffs concede that their taxpayer representative, Soranno, received a copy of the Notice of Assessment but did not consider it to be legitimate. In a certification submitted in support of plaintiffs' application to equitably toll the filing deadline in this matter, Soranno states:

[1-4]

5. I did receive and read the "Notice of Assessment Related to Final Audit Determination," Document No. 000016 that was mailed to Plaintiffs on May 23, 2017.

6. I found this document to be fraudulent.

---

[5] In addition to estimated or arbitrary assessments being ineligible for a refund, the Notice of Assessment and RP Notice also list jeopardy assessments, delinquency assessments, penalty and interest assessments, self-assessed taxes, and costs of collection as assessments that are ineligible for a refund under N.J.S.A. 54:49-14(b) and N.J.A.C. 18:2-5.5(c)(5).

8

7. Because I found this document to be fraudulent, I did not respond to it and instructed my client no response was necessary.

Plaintiffs assert that due to a decades-long relationship with Soranno, they relied in good faith on his professional advice. Plaintiffs contend that as a result, they did not submit a written protest to defendant nor file an appeal with the Tax Court within the ninety-day statutory time frame. In sum, plaintiffs maintain that Soranno's misguidance coupled with their unchecked trust in his judgment present extraordinary circumstances that merit equitable relief.

On December 12, 2017, Soranno sent a letter to Pioneer Credit Recovery, a collection agency working on defendant's behalf, stating, "We are not in receipt of your audit or how you arrived at your figures."[6] On January 11, 2018, Soranno received a copy of the audit from Pioneer Credit Recovery. Under a January 25, 2018 letter to defendant's Conference and Appeals Branch, Soranno challenged several of the findings in the Pepe audit report and stated his willingness to remedy the situation.

On March 16, 2018, defendant sent Pepe a letter advising that Soranno's January 25, 2018 protest correspondence was untimely as it was submitted after August 21, 2017, which marked the expiration of the ninety-day appeal period.

---

[6] Soranno's letter appears to be in response to a collection letter from Pioneer Credit Recovery although that letter is not included in the record.

Thus, Soranno's request for a hearing was denied. Defendant's letter was sent to Pepe by certified mail with a copy sent by regular mail to Soranno. The certified mail was again returned to defendant as undeliverable. A copy was re-sent by defendant to Pepe by regular mail.

On September 19, 2019, defendant issued a second RP Notice to Grumka that was successfully delivered by certified mail. The second RP notice, like the initial RP Notice, contained taxpayer appeal rights as set forth above. As with the initial RP Notice, Grumka did not submit a protest to defendant or file an appeal with the Tax Court.

On February 12, 2020, defendant issued Grumka a Notice and Demand for Payment in his capacity as a responsible person for Pepe. Specifically, defendant advised Grumka that he owed trust fund taxes, namely GIT-ER and ST, in the amount of $33,431.75 and that if payment was not made in thirty days, collection efforts would ensue. The record reflects that the demand letter was sent by certified mail and successfully delivered to Grumka on February 15, 2020.

On September 30, 2021, defendant asked the Clerk of the Superior Court to docket a certificate of debt ("COD") against Grumka. The COD certified that Grumka owed GIT-ER in the amount of $3,113.83 and ST in the amount of $33,922.50, including penalty and interest. On October 1, 2021, defendant issued

Grumka a Notice of Judgment as a responsible person of Pepe in the amount of $37,036.33 ("Judgment").

On or about January 6, 2022, defendant levied $41,728.28 from Grumka's bank account to satisfy the Judgment.

Under a June 22, 2022 letter to defendant, Soranno renewed his request for resolution.

On October 11, 2022, Soranno filed a complaint with the Tax Court in the form of a letter seeking a refund of the levied funds. The filing was deemed deficient due to plaintiffs' failure to include certain required items. In addition, Pepe was a corporate entity requiring an authorized attorney to appear on its behalf under R. 1:21-1(c) and could not be represented by its accountant.

On November 16, 2022, plaintiffs' counsel filed a Notice of Appearance and an Amended Complaint with attachments. These consisted of a Case Information Statement (CIS), Form A-1730, used for filing a refund claim with defendant, and a one-page Schedule of Liabilities that was attached to the Notice of Assessment and RP Notice.

The Amended Complaint asserts that plaintiffs are contesting "[t]he denial of plaintiff's claim for refund(s) by [defendant], as shown on the attached information schedule(s) which is/are made part of this complaint." The Amended Complaint, however, does not contain a written denial of plaintiffs' purported refund claim. Nor

does the CIS include a final determination from defendant, despite it referring to this document as an attachment. Instead, Form A-1730, the refund claim form, was submitted with the Amended Complaint and is dated five days prior to its filing.

The court conducted a number of case management conferences where the issue of the timeliness of plaintiffs' complaint was raised. The issue not being resolved between the parties, the court, sua sponte, ordered plaintiffs to show cause why the Amended Complaint should not be dismissed with prejudice for lack of subject matter jurisdiction.

III.   Conclusions of Law

A review of the statutory framework governing this matter begins with an examination of a taxpayer's appeal rights upon the issuance of a Notice of Assessment. The State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to 54:54-6 ("UPL"), provides that a taxpayer may either file a protest with the Director and request a hearing, or alternatively, file an appeal with the Tax Court. See N.J.S.A. 54:49-18(a); N.J.S.A. 54:51A-14(a).

With respect to the filing of a protest challenging a finding or assessment of the Director, N.J.S.A. 54:49-18(a) provides, in part, that:

> If any taxpayer shall be aggrieved by any finding or assessment of the director, he may, within 90 days after the giving of the notice of assessment or finding, file a protest in writing signed by himself or his duly authorized agent, certified to be true, which shall set forth the reason therefor, and may request a hearing. Thereafter the

12

director shall grant a hearing to the taxpayer, if the same shall be requested and shall make a final determination confirming, modifying or vacating any such finding or assessment.

[N.J.S.A. 54:49-18(a).]

Likewise, for appeals filed in the Tax Court, the UPL requires that "all complaints be filed within 90 days after the date of the action sought to be reviewed." N.J.S.A. 54:51A-14(a).

The 90-day limitations period for filing an appeal with the Tax Court is confirmed under R. 8:4-1(b), which states that "[c]omplaints seeking to review actions of the Director [] with respect to a tax matter. . . shall be filed within 90 days after the date of the action to be reviewed." Ibid.

A.      Plaintiffs are not eligible to claim a refund under N.J.S.A. 54:49-14(a)

Plaintiffs concede they did not timely protest or appeal the Notice of Assessment, which resulted in collection proceedings being instituted against Grumka in January 2022. Nevertheless, plaintiffs submit there is an alternate remedy available to them. To wit, they contend that they are eligible to file a refund claim under N.J.S.A. 54:49-14(a), which provides, in part, that:

Any taxpayer, at any time within four years after the payment of any original or additional tax assessed against him, unless a shorter limit is fixed by the law imposing the tax, may file with the director a claim under oath for refund, in such form as the director may prescribe, stating the grounds therefor, but no claim for refund shall  be required or permitted to be filed with respect to a tax paid,

13

after protest has been filed with the director or after proceedings on appeal have been commenced as provided in this subtitle, until such protest or appeal has been finally determined.

[N.J.S.A. 54:49-14(a).][7]

Thus, plaintiffs urge that if the Director issues a finding, notice or other determination assessing tax and a taxpayer fails to challenge same within ninety days, the taxpayer is permitted to file a refund claim within four years after paying the assessment. In this matter, on or about January 6, 2022, defendant levied approximately $42,000 from Grumka's bank account, which plaintiffs deem the date that Pepe paid the assessment. Therefore, plaintiffs calculate that they had four years from the date of levy, or until January 6, 2026, to file a refund claim. Plaintiffs' Complaint was filed on October 11, 2022.[8]

In Toys "R" Us v. Dir., Div. of Tax'n, 300 N.J. Super. 163 (App. Div. 1997), the plaintiff was audited by the Director. Among other items, the plaintiff was assessed sales tax on labels it affixed to items sold to its customers. After paying

---

[7] The Sales and Use Tax Act, N.J.S.A. 54:32B-1 to 54:32B-55 ("SUT Act"), contains a similar refund provision which states that "the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such shall be made within four years from the payment thereof." N.J.S.A. 54:32B-20(a).

[8] The Amended Complaint was filed on November 16, 2022, but as all deficiencies in the Complaint were corrected, the filing date is that of the initial Complaint.

14

the assessment in April 1991, the plaintiff discovered in a March/April copy of the New Jersey State Tax News that the Director had reworked its policy so that the labels were exempt from ST. The plaintiff filed a refund claim with the Director more than ninety days from the date of both the original assessment and a revised assessment that followed. The Director denied the refund claim due to untimeliness. Id. at 164-67.

Apart from an analysis of the equitable considerations in the case, which will be discussed below, the court in Toys "R" Us concluded that "the two-year refund period [now four years][9] set forth under N.J.S.A. 54:49-14[10] and N.J.S.A. 54:32B-20(a) does not apply to taxpayers seeking a refund of taxes which have been assessed by the Division," 300 N.J. Super. at 168 (citing Dan Constr. Co. v. Dir., Div. of Tax'n, 14 N.J. Tax 569, 572 (Tax 1995)), where the court clarified there is a "distinction between a payment based on a taxpayer's own calculations, to which the [four-year] refund claim period established by N.J.S.A. 54:49-14 applies, and a

---

[9] The two-year refund period in N.J.S.A. 54:49-14 and N.J.S.A. 54:32B-20 was enlarged to four years under the Taxpayers' Bill of Rights, L. 1992, c. 175, subsequent to the audit period in Toys "R" Us. See 300 N.J. Super. 163.

[10] N.J.S.A. 54:49-14 and N.J.S.A. 54:32B-20 were each amended in 1998 to add subsection (b), which provides a procedure for filing a refund claim after an assessment of tax has been made by the Director. See L. 1998, c. 106. Accordingly, the pre-1998 case law refers to these statutes without subsections.

15

payment to satisfy an assessment or other determination made by the Division, to which the refund statute does not apply").

Additionally, in <u>Vicoa, Inc. v. Dir., Div. of Tax'n</u>, 166 N.J. Super. 496 (App. Div. 1979), the taxpayer was assessed a CBT deficiency and filed a claim for a refund rather than an appeal to the Division of Tax Appeals (now the Tax Court) from the Director's final determination. The taxpayer contended that a proper reading of N.J.S.A. 54:10A-19.2 (providing a ninety-day appeal period from actions of the Director under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to 54:10A-41 ("CBT Act")) together with N.J.S.A. 54:49-14 (now subsection (a), providing a four-year refund period) afforded two options for relief. Namely, the taxpayer could (1) not pay the tax and file an appeal within the prescribed ninety-day period in N.J.S.A. 54:10A-19.2, or (2) pay the tax, file a claim for refund within the then two-year period under N.J.S.A. 54:49-14, and if the refund claim is denied, file an appeal with the Tax Court within ninety days of the denial. <u>Id.</u> at 501. The court disagreed, explaining why the refund provision was applicable only to those taxes that are self-assessed:

> It is reasonable that a corporation which pays taxes on the basis of its own calculations should have a longer interval within which to discover an error and to claim a refund. On the other hand, it is just as reasonable to require a corporation which desires to contest a determination of the Director to have a comparatively shorter interval within which to do so. To interpret the statutes as appellant argues for all practical purposes would convert the three-month

16

period under N.J.S.A. 54:10A-19.2(a) into a much greater period in any case where the corporate taxpayer wants to extend the time. This would result in the former statute's being practically a nullity -- a result which should not be tolerated.

[Id. at 502-03.]

In the case at bar, plaintiffs seek a refund of taxes collected from Grumka pursuant to the Director's additional assessment of tax. It is clear from the settled case law, however, that the refund relief provided under N.J.S.A. 54:49-14(a) is available solely with respect to self-assessed taxes. Thus, plaintiffs may not proceed under subsection (a). As such, the court turns to the issue of whether plaintiffs are eligible to file a refund claim under subsection (b) of that statute.[11]

B.      Plaintiffs do not meet the criteria for a refund claim under N.J.S.A. 54:49-14(b)

On September 14, 1998, N.J.S.A. 54:49-14 was amended to provide a remedy to taxpayers who seek a refund in cases where the Director has made a tax assessment. See L. 1998, c. 106. It serves as a corollary to subsection (a) and provides in part:

> No taxpayer shall be precluded from claiming a refund of additional tax assessed solely on the ground that the taxpayer neither protested or appealed from any part of the assessment. A taxpayer may, pursuant to this subsection, file a claim for the refund of the assessment of additional tax if (1) the taxpayer neither protested nor appealed from

---

[11] Plaintiffs do not offer an analysis of their eligibility for a refund under subsection (b), deeming it unnecessary due to their purported eligibility under subsection (a).

17

the assessment, (2) the taxpayer paid the assessment in full within one year after the expiration of the period allowed for filing a protest of the assessment, (3) the taxpayer files the claim for the refund within 450 days of the expiration of the period allowed for filing such a protest, and (4) the amount of the refund claimed pursuant to this subsection does not exceed the amount of the assessment paid. . . . The denial of a claim for refund shall be an action of the director subject to review pursuant to [N.J.S.A. 54:51A-14].

[N.J.S.A. 54:49-14(b).]

N.J.S.A. 54:49-14(b) provides a more precise scheme, including a narrower timeframe, for filing a refund claim than does subsection (a). In addition, it serves as the lynchpin for refund provisions in related tax statutes that were simultaneously amended.

As amended, the CBT Act provides, in part, that:

Any aggrieved taxpayer that has neither protested or appealed from an additional assessment of tax may, pursuant to subsection b. of [N.J.S.A. 54:49-14], file a claim for refund of the assessment paid.

[N.J.S.A. 54:10A-19.2(b).]

As amended, The SUT Act provides, in part, that:

A person shall not be entitled to a revision, refund or credit under this section of a tax, interest or penalty which had been determined to be due pursuant to the provisions of [N.J.S.A. 54:32B-19] where the person has had a hearing or an opportunity for a hearing as provided in said section or has failed to use the remedies therein provided unless the person otherwise meets the requirements of subsection b. of [N.J.S.A. 54:49-14.]

18

[N.J.S.A. 54:32B-20(b).]

As amended, the Gross Income Tax Act, N.J.S.A. 54A:9-1 to 54A:9-30, provides, in part, that:

> Any aggrieved taxpayer that has neither protested or appealed from an assessment of tax may, pursuant to subsection (b) of [N.J.S.A. 54:49-14], file a claim for refund of the assessment paid.

> [N.J.S.A. 54A:9-10(b).]

However, before determining if plaintiffs are eligible for a refund under subsection (b), a threshold determination must be made, namely, whether the assessment of tax is additional or estimated.

An additional tax assessment is a deficiency assessment as defined under N.J.S.A. 54:49-6[12] and under N.J.A.C. 18:2-5.5(a)(2), and is one in that:

> [A] taxpayer has filed a tax return or report, and the Director determines that there is a deficiency with respect to the payment of tax due because the amount of tax shown due on the report or return is less than the amount of tax due after adjustment of the amount due upon . . . audit of the return or report by the Director.

> [N.J.A.C. 18:2-5.5(a)(2).]

---

[12] N.J.S.A. 54:49-6 provides that a deficiency assessment is one where "a return or report is filed under the provisions of any State tax law" and the Director examines that return or report, and "determine[s] there is a deficiency with respect to any tax due. . . .", at which point the Director assesses the additional taxes, penalties, and interest. after decides to audit same and "determine[s] that there is a deficiency with respect to the payment of any tax."

19

On the other hand, a delinquency, arbitrary or estimated tax assessment is defined as an assessment made under N.J.S.A. 54:49-5[13] or any similar tax statute where "the taxpayer has failed to file a return or report . . . or has filed a return or report that is insufficient for the Director to evaluate its accuracy, and the Director has estimated and assessed the taxes, fees, penalties, and interest from the taxpayer." N.J.A.C. 18:2-5.5(a)(1).

In the case of an estimated tax assessment, a taxpayer is foreclosed from relief under N.J.S.A. 54:49-14(b). ("A taxpayer may, pursuant to this subsection, file a claim for the refund of the assessment of additional tax . . . .") Ibid. (emphasis added). See also N.J.A.C. 18:2-5.5(c)(5) ("The procedures [for filing a refund claim] do not apply to refunds of payments of costs of collection, delinquency, estimated or arbitrary tax assessments, jeopardy tax assessments when no return has been filed for the period(s) at issue . . . and payments of penalty and interest imposed without assessment of an additional tax.").[14] Ibid.

---

[13] N.J.S.A. 54:49-5 states: "If any taxpayer shall fail to make any report as required by any state tax law, the commissioner may make an estimate of the taxable liability . . . from any information he may obtain, and according to such estimate . . . assess the taxes, fees, penalties and interest due . . . ."

[14] It is worth noting that N.J.S.A. 54:49-5, N.J.A.C. 18:2-5.5(a)(1), and N.J.A.C. 18:2-5.5(c)(5), taken together, do not clarify whether their provisions encompass every audit where a determination is based on the inadequacy of books and records of a business entity, as happened to some degree in the instant case. This

Affording plaintiffs the benefit of all reasonable and legitimate inferences, the court found that the assessments at issue are additional assessments rather than estimated assessments. Thus, as more fully set forth in Section II above, plaintiffs satisfy the initial hurdle to claim a refund under N.J.S.A. 54:49-14(b). In addition, the court emphasizes that it is immaterial whether the additional tax assessment was paid voluntarily by the taxpayer or, as is the case here, the tax was paid as a result of the collection efforts by the Director. See N.J.A.C. 18:2-5.5(c)(7).

Prong 1 under N.J.S.A. 54:49-14(b) requires that the taxpayer neither protest nor appeal the assessment. Here, Soranno sent a letter on behalf of Pepe to defendant on January 25, 2018, wherein he questioned the findings in the audit report. Defendant deemed the letter to be a protest, and responded on March 16, 2018 that the protest correspondence was untimely as it was submitted after the ninety-day period ending on August 21, 2017. Thus, the untimely protest had the same effect as if no protest was filed. Plaintiffs received no benefit from filing the protest; the request for a hearing was denied.

The statute requires that no protest or appeal be filed because a taxpayer is not afforded dual options when responding to an action of the Director. See Vicoa, Inc., 166 N.J. Super. at 503 (wherein the court held that a taxpayer cannot seek a refund

---

interpretation would result in every audit of this type being foreclosed from the refund claim provision in N.J.S.A. 54:49-14(b).

of taxes paid and if denied, file an appeal with the Division of Tax Appeals within the ninety-day limitation period). A taxpayer who files an untimely protest has no recourse other than to claim a refund. Therefore, there is no practical reason for an untimely protest to bar a taxpayer from proceeding under this statute. Thus, plaintiffs satisfy the first prong of subsection (b).

Prong 2 under N.J.S.A. 54:49-14(b) requires a taxpayer to pay the assessment in full within one year after the expiration of the protest period. On this point, plaintiffs cannot prevail. The protest period expired on or about August 21, 2017. The assessment was paid, according to plaintiffs, on January 6, 2022, more than three years after expiration of the time to pay the assessment in full.[15] As all four prongs in subsection (b) must be met, plaintiffs are not eligible to claim a refund thereunder.[16]

---

[15] In addition to the GIT-ER and ST assessments being paid after the prescribed period, it is unknown if the assessment was paid "in full" on January 6, 2022. The record does not indicate if plaintiffs separately paid the CBT assessment.

[16] For the sake of thoroughness, it is noted that plaintiffs do not satisfy the third prong, which requires a taxpayer to file the refund claim within 450 days of the expiration of the period for filing a protest. Here, that date falls on or about November 14, 2018. Plaintiffs' complaint was filed nearly four years later on October 11, 2022. Moreover, plaintiffs filed their refund claim with the Tax Court. The relevant tax statutes and regulations require that it be filed with the Director. "The denial of a claim for refund shall be an action of the director subject to review pursuant to [N.J.S.A. 54:51A-14.] N.J.S.A. 54:49-14(b). Finally, plaintiffs do satisfy the fourth prong, which limits the amount of the refund claim to the actual amount of the assessment paid. In this case, plaintiffs are seeking a return of only

C.    Plaintiffs do not meet the bar for equitable relief

In the alternative, plaintiffs contend the court should grant them relief under the doctrine of equitable tolling. In short, they submit that they relied to their detriment on the flawed advice of their longtime accountant, Soranno, who advised plaintiffs that the audit results were fraudulent and did not merit a response. Plaintiffs now seek to toll the ninety-day limitation period under N.J.S.A. 54:10A-19.2 for filing an appeal to the Tax Court.

Judge Kuskin noted that "[s]tatutes of limitation applicable to the filing of claims for tax refunds or relief from tax assessments are strictly construed." M.J. Ocean, Inc. v. Dir., Div. of Tax'n, 23 N.J. Tax 646, 651 (Tax 2008). In F.M.C. Stores v. Borough of Morris Plains, 100 N.J. 418, 425 (1985), the Court held that "[s]trict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government." These time constraints are immutable "in order to provide finality and predictability of revenue to state and local government." Bonanno v. Dir., Div. of Tax'n, 12 N.J. Tax 552, 556 (Tax 1992) (citing Pantasote, Inc. v. Dir., Div. of Tax'n, 8 N.J. Tax 160, 164-66 (Tax 1988)). In Slater v. Dir., Div. of Tax'n, 26 N.J. Tax 322, 333 (Tax 2012), the

those funds levied from Grumka's bank account, i.e., the amount paid as to the GIT-ER and ST assessments.

23

court noted prior holdings that "[t]he Tax Court lacks jurisdiction to hear the complaint of a taxpayer which was not filed until the day after the 90 day period." See also Clairol, Inc. v. Kingsley, 109 N.J. Super. 22, 25 (App. Div. 1970); F.M.C. Stores, 100 N.J. at 423-25.

In this matter, plaintiffs contend that their reliance on the erroneous advice of their accountant presents an extraordinary circumstance that merits equitable intervention. The court disagrees. Plaintiffs' reason for failing to timely contest the Notice of Assessment reveals an inattentiveness to the realities of conducting a business enterprise. Plaintiffs were notified under the Director's January 11, 2016 letter that an audit of their books and records would take place. They appointed Soranno as their taxpayer representative but did not shed responsibility with respect to the audit results in doing so.

Soranno, for his part, knew that the auditor would be making findings and preparing a report. Yet, he stated in his certification that he found the Notice of Assessment to be fraudulent. While it is not known what Soranno meant by "fraudulent", his opinion did not excuse Pepe from timely responding to the Notice of Assessment. "Equity demands more than good faith; it demands diligence in the protection of one's own interest." H.B. Acquisitions v. Dir., Div. of Tax'n, 12 N.J. Tax 60, 69 (Tax 1991). The court further held that "[w]hile one may appreciate the effort required of taxpayer to appraise assets and to determine actual tax liability,

24

this task does not excuse taxpayer from complying with the statutory limitations period." Ibid.

Here, plaintiffs took no action with respect to the Notice of Assessment until January 25, 2018, after receiving a collection notice from Pioneer Credit Recovery. At this point, the period to file a protest or appeal was five months out of time. Plaintiffs rely on Toys "R" Us, 300 N.J. Super. 163, to support their claim for equitable tolling. In Toys "R" Us, the matter was remanded to the Tax Court to determine if a change in the Director's policy, discovered by the taxpayer after the appeal period had expired, resulted in a mistaken assessment of ST to plaintiff. In the instant matter, plaintiffs failed to exercise a modicum of diligence with respect to the audit findings and equitable relief is not appropriate.

Based on the foregoing, the court concludes that plaintiffs' complaint seeking a refund of the taxes collected under the COD is without merit. Therefore, the complaint is dismissed with prejudice.